**Affirmed and Memorandum Opinion filed October 17, 2023.**



In The

# Fourteenth Court of Appeals

## NO. 14-22-00565-CV

### KATIE RANKIN, Appellant

### V.

### ERICA HERNANDEZ, CHANTAY SOLANO, AND DELCIA SALDANA, Appellees

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-18318**

## M E M O R A N D U M   O P I N I O N

Appellees Erica Hernandez, Chantay Solano, and Delcia Saldana (together, "Appellees") were traveling together in a car when they were rear-ended by a vehicle driven by appellant Katie Rankin. Appellees sued Rankin for negligence, seeking to collect damages for injuries sustained in the accident.

The parties proceeded to a jury trial and the jury returned a verdict assessing a total of $143,000 in damages for all three Appellees. Rankin appealed and, in a

single issue, asserts the evidence is legally and factually insufficient to establish a causal relationship between the accident and Appellees' claimed injuries and medical expenses. For the reasons below, we affirm.

## BACKGROUND

On March 23, 2014, Hernandez was driving her Ford Mustang with Saldana and Solano traveling as passengers. Hernandez was slowing down to come to a stop at a red light when her car was rear-ended by a vehicle driven by Rankin. All three Appellees visited a chiropractor the day after the car accident, seeking treatment for neck and back injuries.

Appellees sued Rankin in March 2016 and asserted claims for negligence. Rankin ultimately accepted fault for the collision but disputed Appellees' claimed injuries and damages. The parties proceeded to a jury trial on these issues in March 2022.

Three questions were submitted to the jury, each inquiring as to the sum of money that "would fairly and reasonably compensate" each Appellee for her injuries, "if any, that resulted from the occurrence in question." The jury returned the following assessments:

Erica Hernandez

| | |
|---|---|
| Physical pain sustained in the past: | $25,000 |
| Physical pain that, in reasonable probability, Hernandez will sustain in the future: | $25,000 |
| Reasonable medical care expenses incurred in the past: | $7,000 |

Chantay Solano

| | |
|---|---|
| Physical pain sustained in the past: | $2,000 |
| Physical pain that, in reasonable probability, | $15,000 |

2

Solano will sustain in the future:

| | |
|---|---|
| Reasonable medical care expenses incurred in the past: | $2,000 |

Delcia Saldana

| | |
|---|---|
| Physical pain sustained in the past: | $25,000 |
| Physical pain that, in reasonable probability, Saldana will sustain in the future: | $35,000 |
| Reasonable medical care expenses incurred in the past: | $7,000 |

The trial court signed a final judgment on May 3, 2022, awarding Appellees the damage amounts assessed in the jury's verdict. Rankin filed a motion for new trial, asserting the evidence was legally and factually insufficient to show that the accident caused the Appellees' injuries. The trial court signed an order denying the new trial motion and Rankin appealed.

**ANALYSIS**

In a single issue, Rankin argues that Appellees "failed to meet their burden of proof at trial to establish a causal relation between the accident, [their] claimed injuries and [their] medical treatment." This failure, Rankin contends, renders the evidence legally and factually insufficient to support the judgment. We presume without deciding that these arguments were properly preserved and analyze their merits below.

I. **Legal and Factual Sufficiency: Standards of Review and Governing Law**

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 821-22, 827 (Tex. 2005). The evidence is legally sufficient if it would enable

3

a reasonable and fair-minded person to reach the verdict under review. *Id*. at 827. There is "no evidence" or legally insufficient evidence when (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *See id*. at 810.

A legal sufficiency challenge asserting that an expert opinion is conclusory can be raised for the first time on appeal. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 817 (Tex. 2009). An expert opinion is considered conclusory if it is essentially "a conclusion without any explanation." *See Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 399 & n.32 (Tex. 2008). Accordingly, "if no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence." *City of San Antonio*, 284 S.W.3d at 818; *see also Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999) ("it is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions, that can settle an issue as a matter of law"). But just because an expert's testimony could have been clearer does not render it conclusory as a matter of law. *Gunn v. McCoy*, 489 S.W.3d 75, 85 (Tex. App.—Houston [14th Dist.] 2016), *aff'd*, 554 S.W.3d 645 (Tex. 2018).

When reviewing the factual sufficiency of the evidence, we examine the entire record, considering all the evidence both in favor of and contrary to the challenged finding. *Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 723 (Tex. App.—Houston [14th Dist.] 2017, no pet.). When a party attacks the factual sufficiency of the evidence pertaining to a finding on which the party did not have the burden of proof, we may set aside the finding only if it is so contrary

4

to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Bennett v. Comm'n for Lawyer Discipline*, 489 S.W.3d 58, 66 (Tex. App.—Houston [14th Dist.] 2016, no pet.). We consider all the evidence, but will not reverse the judgment unless the evidence supporting the challenged finding is so weak as to render the finding clearly wrong and manifestly unjust. *4922 Holdings, LLC v. Rivera*, 625 S.W.3d 316, 324 (Tex. App.—Houston [14th Dist.] 2021, pet. denied). The amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

To prevail on a negligence claim, a plaintiff must prove the existence of a duty, a breach of that duty, and damages proximately caused by the breach. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). Establishing causation in a personal injury case requires a plaintiff to "prove that the conduct of the defendant caused an event and that this event caused the plaintiff to suffer compensable injuries." *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 162 (Tex. 2015). Thus, "when an accident victim seeks to recover medical expenses, she must show both 'what all the conditions were' that generated the expenses and 'that all the conditions were caused by the accident.'" *Id*. (quoting *Guevara v. Ferrer*, 247 S.W.3d 662, 669 (Tex. 2007)).

Expert testimony generally is necessary to establish causation of medical conditions that are "outside the common knowledge and experience of jurors." *Guevara*, 247 S.W.3d at 665; *see also, e.g.*, *Jefferson v. Parra*, 651 S.W.3d 643, 650-51 (Tex. App.—Houston [14th Dist.] 2022, no pet.). To constitute evidence of causation, a medical expert's opinion must rest in reasonable medical probability. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). Whether expert testimony on causation rests on a reasonable medical probability must be

5

determined by the substance and context of the testimony rather than semantics or use of a particular term or phrase. *Smith v. Landry's Crab Shack, Inc.*, 183 S.W.3d 512, 514 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

However, a plaintiff "is not required to establish causation in terms of medical certainty nor is he . . . required to exclude every other reasonable hypothesis." *Bradley v. Rogers*, 879 S.W.2d 947, 954 (Tex. App.—Houston [14th Dist.] 1994, writ denied). On that note, "a medical causation expert need not disprove or discredit every possible cause other than the one espoused by himself." *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 218 (Tex. 2010) (internal quotation omitted). Only if the evidence presents other plausible causes of the claimed injuries or conditions must the plaintiff offer evidence excluding those causes with reasonable certainty. *JLG Trucking, LLC*, 466 S.W.3d at 162.

## II.   Relevant Evidence

### A.   Appellees' Evidence

*Appellee Erica Hernandez*

Testifying at trial, Hernandez said she was 29 years old at the time of the car accident. Hernandez said the accident occurred at approximately 7:00 p.m. on March 23, 2014. Later that night, Hernandez recalled she "started to feel pain [that] kept worsening, getting worse throughout the night." Hernandez said she sought medical treatment the day after the vehicle accident and went to Dr. Zicterman, a chiropractor.

Hernandez testified that she received treatment from Dr. Zicterman, including heating pads, electric shock treatments, and various physical exercises and adjustments. Hernandez also recalled getting an MRI on her neck and lower back. Post-treatment, Hernandez said she expects that her pain will "sometimes

fluctuate from maybe no pain or sometimes a little bit of pain and sometimes can feel a little worse."

Hernandez said she did not have any neck or back pain before the 2014 car accident. Describing her current situation, Hernandez said her pain can be aggravated by sitting for extended periods of time. Hernandez also said the pain prevents her from riding bikes or playing soccer.

The jury also heard testimony from Naomi Vela, one of Hernandez's friends. Describing Hernandez's condition after the car accident, Vela said Hernandez complained of back and neck pain that affected her ability to walk up stairs and sit for long periods of time. Vela testified that Hernandez is not "as active as she normally was" and no longer played soccer despite previously being an "avid player." Vela said Hernandez never complained about back or neck pain before the accident.

Dr. Zicterman testified about the treatment he provided Hernandez after the accident. Beginning with his medical background, Dr. Zicterman said he graduated from the Texas Chiropractic College in 1998 and has been practicing as a chiropractor since his graduation. Dr. Zicterman said he previously had treated patients after "a motor vehicle collision where they were struck from behind." Describing the types of complaints these patients typically presented with, Dr. Zicterman said it is "more of a back and low back injury, just because of the mechanism of the injury from behind."

Dr. Zicterman said he examined Hernandez on March 24, 2014, the day after the car accident. According to Dr. Zicterman, he performed an orthopedic exam, muscle-strength testing, and range-of-motion testing on Hernandez, who was complaining of cervical and lumbar pain. Dr. Zicterman said he diagnosed

7

Hernandez with "cervicalgia[1], cervical sprain/strain, [and] low back pain as well as [a] lumbar sprain/strain."

Dr. Zicterman said Hernandez's course of treatment included "passive modalities" like electric stimulation treatments and heat packs, "active rehabilitation" to strengthen the muscles, and "manual therapy" including stretching and deep tissue work.

Despite this treatment, Dr. Zicterman testified that Hernandez still had "residual complaints." Dr. Zicterman said Hernandez was referred for an MRI, a medical procedure he described as "reasonable and necessary" because Hernandez "was still having the complaints of the neck and back even after all this time of doing the therapies." Dr. Zicterman said the MRI showed that Hernandez had three disc herniations[2] in her neck.

To sum up Dr. Zicterman's testimony with respect to Hernandez, Appellees' counsel asked Dr. Zicterman if he "ha[d] an opinion based on reasonable medical probability about whether the — the car collision . . . caused or contributed to the condition you diagnosed in Ms. Hernandez?" Dr. Zicterman responded "[y]es" and explained that "it's the mechanism of the injury, to me, that caused the neck injury and the low back injury."

Dr. Zicterman's medical records for Hernandez also were admitted into evidence. In relevant part, these records show as follows:

- Hernandez visited Dr. Zicterman on March 24, 2014, the day after the car accident. In his "Initial Evaluation" notes, Dr. Zicterman stated: "The patient was involved in a motor vehicle accident as the driver; was struck by another vehicle. Patient complains of low back and

---

[1] Later on in his testimony, Dr. Zicterman described "cervicalgia" as "pain in the neck."

[2] According to Dr. Zicterman, a "herniation is when the disc is protruded or inflamed [or] irritated," which "can cause irritation to the spinal cord."

cervical pain which radiates into the lower and upper extremities." Dr. Zicterman diagnosed Hernandez with the following conditions: (1) cervicalgia; (2) cervical sprain/strain; (3) lumbago; (4) lumbar sprain/strain; and (5) muscle spasms. The bill for this visit shows a charge for $435.

- Hernandez visited Dr. Zicterman 14 times between March 26 and June 4, 2014. Visit notes for each of Hernandez's 14 visits list (1) the areas of complaint; (2) the pain level; (3) the objectives for that day's treatment; and (4) the treatment administered. The bills for these visits totaled $2,090.

- Hernandez received an MRI on May 7, 2014. The bill for the MRI shows a charge for $4,112.

Dr. Zicterman testified that the services he provided Hernandez were "necessary for the proper treatment of the conditions" he diagnosed. Dr. Zicterman agreed that it also was necessary for Hernandez to undergo an MRI.

### Appellee Delcia Saldana

Saldana was 37 years old at the time of the vehicle accident. According to Saldana, shortly after the accident she felt pain in her neck, back, and left shoulder. Saldana said she sought medical care the day after the accident and visited Dr. Zicterman. Saldana said Dr. Zicterman used hot and cold therapy and electric stimulation before referring her to have an MRI.

Saldana said she did not have any neck, back, or shoulder pain prior to the 2014 accident. Post-treatment, Saldana said certain activities can aggravate her pain including "lifting heavy things," "moving furniture," and "sleeping on [her] side." Saldana also said she no longer goes to the gym because it causes her "a pretty fair amount of pain."

According to Dr. Zicterman's testimony, Saldana presented the day after the accident complaining of neck, lower back, and shoulder pain. After examining Saldana, Dr. Zicterman diagnosed her with "cervicalgia, cervical sprain/strain,

9

lumbar sprain/strain, and lumbago to the back, as well as pain to the left shoulder." Dr. Zicterman testified that Saldana underwent a course of treatment similar to Hernandez's, which included passive modalities, active rehabilitation, and manual therapy.

According to Dr. Zicterman, Saldana also was referred for an MRI. Dr. Zicterman said the MRI showed that Saldana had two disc herniations in her neck, three disc herniations in her lower back, and "a small amount of physiological fluid within the glenohumeral joint" of her left shoulder. Dr. Zicterman opined that these injuries were "due to the mechanism of injury from the motor vehicle accident."

Dr. Zicterman's medical records for Saldana also were admitted into evidence. In relevant part, these records show as follows:

- Saldana visited Dr. Zicterman on March 24, 2014, the day after the car accident. In his "Initial Evaluation" notes, Dr. Zicterman stated: "The patient was involved in a motor vehicle accident as the front seat passenger; was struck by another vehicle. Patient complains of low back and cervical pain which radiates into the lower and upper extremities and left shoulder pain." Dr. Zicterman diagnosed Saldana with the following conditions: (1) cervicalgia; (2) cervical sprain/strain; (3) lumbago; (4) lumbar sprain/strain; (5) injury to the left shoulder; and (6) muscle spasms. The bill for this visit shows a charge for $435.

- Saldana visited Dr. Zicterman 15 times between March 26 and June 4, 2014. Visit notes for each of Saldana's 15 visits list (1) the areas of complaint; (2) the pain level; (3) the objectives for that day's treatment; and (4) the treatment administered. The bills for these visits totaled $2,250.

- Saldana received an MRI on May 7, 2014. The bill for the MRI shows a charge for $4,162.

Dr. Zicterman testified that the services he provided Saldana were "necessary for

10

the proper treatment of the conditions" he diagnosed. Dr. Zicterman agreed that it also was necessary for Saldana to undergo an MRI.

***Appellee Chantay Solano***

Solano is Saldana's daughter and, at the time of the accident, she was 17 years old. According to Saldana, Solano was unable to testify at trial because she had "a rash over her entire body." Saldana said that, after the accident, Solano is "always complaining [about] a lot of pain in her neck." Saldana said Solano did not complain about neck pain prior to the accident.

According to Dr. Zicterman, Solano also presented to him the day after the accident complaining of neck and lower back pain. Dr. Zicterman performed the same tests he did on Hernandez and Saldana and diagnosed Solano with cervicalgia and lumbar pain. Dr. Zicterman opined that, "based on reasonable medical probability," Solano's injuries were caused by "the mechanism of injury in the car accident."

Dr. Zicterman said he also referred Solano for an MRI. According to Dr. Zicterman, the MRI showed that Solano had one disc herniation in her neck and one disc herniation in her lower back. Dr. Zicterman said the MRI also showed that Solano "had a reversal of the lordotic curve of the neck which is compatible with muscle spasm."

Dr. Zicterman's medical records for Solano also were admitted into evidence. In relevant part, these records show as follows:

- Solano visited Dr. Zicterman on March 24, 2014, the day after the car accident. In his "Initial Evaluation" notes, Dr. Zicterman stated: "The patient was involved in a motor vehicle accident as the rear seat passenger; was struck by another vehicle. Patient complains of low back and cervical pain." Dr. Zicterman diagnosed Solano with the following conditions: (1) cervicalgia; (2) lumbago; (3) lumbar

11

sprain/strain; and (4) muscle spasms.  The bill for this visit shows a charge for $435.

- Solano visited Dr. Zicterman eight times between March 26 and April 11, 2014.  Visit notes for each of Solano's eight visits list (1) the areas of complaint; (2) the pain level; (3) the objectives for that day's treatment; and (4) the treatment administered.  The bills for these visits totaled $1,450.

- Solano received an MRI on May 7, 2014.  The bill for the MRI shows a charge for $5,250.

Dr. Zicterman testified that the services he provided Solano were "necessary for the proper treatment of the conditions" he diagnosed.  Dr. Zicterman agreed that it also was necessary for Solano to undergo an MRI.

B.    Rankin's Evidence

The jury also heard testimony from Dr. McKechnie, a chiropractor.  Dr. McKechnie reviewed the Appellees' medical records in preparation for his testimony.  However, Dr. McKechnie did not meet or provide any treatment to the Appellees.

When asked if Appellees "were injured as a result of the March 23, 2014 collision," Dr. McKechnie responded:  "It's hard to say.  [Dr. Zicterman's] records were very strange and peculiar, to say the least."  Elaborating on this point, Dr. McKechnie testified:

> I've never seen three individuals present to the chiropractor and have exactly the same exam findings to the degree.  I've never seen three patients with the same reflex findings or straight leg raise findings or exactly the same orthopedic findings.  In my — my practice, that is — that borderlines on the clinically impossible.
>
> *                        *                        *
>
> The diagnoses, with the exception of [Saldana's] shoulder pain, are essentially identical.  The exam findings are identical.  And a 17-year-old, 29-year-old, a 37-year-old in different vehicle positions, different

12

seat belt configurations all presenting with exactly the same exam findings, that's incredible.

Discussing Hernandez's MRI findings, Dr. McKechnie noted that there were three disc herniations identified on her back. According to Dr. McKechnie, this "[c]an be" a "meaningless finding." With respect to Solano's MRI findings, Dr. McKechnie testified that the notes identified a "1 millimeter broad-based herniation." Dr. McKechnie described this herniation as "nothing." For the herniations noted in Saldana's MRI findings, Dr. McKechnie said they "are normal age-related degenerative changes" that are "not traumatic." Dr. McKechnie opined that it was not necessary for the Appellees to undergo MRIs.

## III. Application

On appeal, Rankin asserts the evidence is legally and factually insufficient to support the award of damages because there was no evidence the accident caused Appellees' injuries and resulting medical expenses. Rankin contends that Dr. Zicterman's testimony cannot support the causation finding because it is conclusory.

As the above evidentiary summaries show, Dr. Zicterman provided similar testimony for all three Appellees regarding his medical conclusions and treatment. With respect to causation, Dr. Zicterman opined that Appellees' injuries were caused by "the mechanism of injury" from the motor vehicle accident.

But the sufficiency of Dr. Zicterman's opinions is not examined in isolation; rather, we consider them in conjunction with the record as a whole to determine whether they are impermissibly conclusory. *See Gunn*, 489 S.W.3d at 85-86 ("When evaluating whether an expert's testimony is speculative or conclusory, or whether an expert's opinion contains fatal analytical gaps, we look to the entire record, not just to the expert's statements in isolation."). Here, considered with all

13

the evidence presented at trial, Dr. Zicterman's opinions on causation are not conclusory.

Dr. Zicterman discussed his initial meeting with each Appellee the day after the car accident, the examinations that were performed, and his diagnoses for each. Dr. Zicterman described each Appellee's course of treatment, which included passive modalities, active rehabilitation, and manual therapy. Dr. Zicterman testified that he also reviewed the Appellees' MRIs and discussed the specific injuries shown in each. These medical visits and the treatments that were provided to each Appellee also were substantiated by the medical records admitted into evidence. This evidence of Dr. Zicterman's medical visits with Appellees, the tests and treatments that were performed on each, and Dr. Zicterman's reviews of those tests provide a factual basis sufficient to support Dr. Zicterman's opinion that the Appellees' injuries were caused by the motor vehicle accident with Rankin. *See, e.g., Port of Houston Auth. v. Morales*, No. 14-21-00052-CV, 2022 WL 4103184, at \*6 (Tex. App.—Houston [14th Dist.] Sept. 8, 2022, no pet.) (mem. op.) (an expert's medical opinion was not conclusory because, "before opining that the gantry accident caused Morales's injuries, [the expert] performed an extensive clinical examination of Morales" and "reviewed Morales's MRIs"); *Hospadales v. McCoy*, 513 S.W.3d 724, 738 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (Dr. Rodriguez's causation opinion was not conclusory because it "was based on [the plaintiff's] description of the accident, his physical examination of [the plaintiff], and the MRI of [the plaintiff's] knee."); *City of Laredo v. Limon*, No. 04-12-00616-CV, 2013 WL 5948129, at \*4 (Tex. App.—San Antonio Nov. 6, 2013, no pet.) (mem. op.) (the expert's opinion was not conclusory because the expert "provided a factual basis to support his opinion based on his examination of [the plaintiff] and his review of [the plaintiff's] medical records").

Moreover, Dr. Zicterman's opinions on causation received additional factual substantiation from other witnesses' testimony. Hernandez testified that she felt pain shortly after the car accident that worsened throughout the night. Hernandez also said she did not have any back or neck pain prior to the accident and, even with the chiropractic treatment she received, she has not been able to resume her pre-accident level of activity. Similarly, Vela testified that Hernandez is not "as active as she normally was."

Saldana testified that she too felt pain in her neck, back, and shoulder shortly after the accident. Saldana said she did not have neck, back, or shoulder pain prior to the accident. Saldana said her post-accident activities have been limited due to the pain resulting from the accident. Saldana said her daughter, Solano, also has complained about neck and back pain after the accident — complaints she did not have before the accident. Together with Dr. Zicterman's testimony, this evidence is legally sufficient to show that Rankin's conduct caused an event and that the event caused the Appellees to suffer compensable injuries. *See JLG Trucking, LLC*, 466 S.W.3d at 162.

Dr. Zicterman also testified as to the treatments provided to each Appellee based on their diagnoses. Notes for these visits were admitted into evidence; the summary for each visit lists (1) the areas of complaint; (2) the pain level; (3) the objectives for that day's treatment; and (4) the treatments administered. Medical records for each Appellee's MRI were admitted into evidence and Dr. Zicterman summarized their findings and their relevance with respect to Appellees' complained-of injuries. The billing records for these treatments and MRIs were admitted into evidence; Dr. Zicterman testified that the treatments he provided and the subsequent MRIs were "reasonable" and "necessary" for Appellees' treatment. Considered with the record in its entirety, this evidence is legally sufficient to

15

establish Appellees' past medical care expenses. *See Gunn*, 489 S.W.3d at 101 ("A claim for past medical expenses must be supported by evidence that such expenses were reasonable and necessary.").

Turning to our factual sufficiency analysis, we also conclude that the challenged finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Bennett*, 489 S.W.3d at 66. As summarized above, Dr. McKechnie was the only witness who offered evidence contrary to the challenged finding. Dr. McKechnie opined as to the weaknesses in the Appellees' medical records and testified that their MRI findings did not exhibit significant injuries.

But it was within the jury's province to resolve these conflicts in the evidence. *See In re Wyatt Field Serv. Co.*, 454 S.W.3d 145, 151 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding [mand. denied]) ("When presented with conflicting testimony, the fact finder may believe one witness and disbelieve others[.]"). Considered in light of the record as a whole, the jury's resolution of this conflict in favor of finding Rankin liable is not clearly wrong or manifestly unjust. *4922 Holdings, LLC*, 625 S.W.3d at 324.

On appeal, Rankin asserts that Appellees never ruled out "other causes" of their injuries. However, as we stated above, it is necessary to rebut other plausible causes of the claimed injuries only if there is evidence of those causes. *See JLG Trucking, LLC*, 466 S.W.3d at 162. Here, there was no evidence that Appellees' injuries were attributable to any other causes. Hernandez testified that she did not have any neck or back pain prior to the car accident with Rankin. Similarly, Saldana testified that neither she nor Solano had any back or neck pain prior to the incident. Therefore, it was not necessary for Appellees to rebut other potential causes of their claimed injuries. *See id*.

16

After applying the applicable standards of review, we conclude that the jury reasonably could have found that the car accident caused the Appellees' injuries and their subsequent treatment. *See City of Keller*, 168 S.W.3d at 821-22, 827. Therefore, legally and factually sufficient evidence supports the jury's findings that the accident caused Appellees' injuries. We overrule Rankin's sufficiency challenge.

CONCLUSION

We affirm the trial court's May 3, 2022 final judgment.

/s/    Meagan Hassan
       Justice

Panel consists of Chief Justice Christopher and Justices Bourliot and Hassan.

17