# IN THE SUPREME COURT OF TEXAS

════════════

No. 13-0978

════════════

JLG TRUCKING, LLC, PETITIONER,

v.

LAUREN R. GARZA, RESPONDENT

════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

════════════════════════════════════════

**Argued February 26, 2015**

JUSTICE LEHRMANN delivered the opinion of the Court.

This case requires us to review the trial court's exclusion of evidence on relevance grounds. The plaintiff was involved in two car accidents approximately three months apart. After the second accident, she sued the opposing driver in the first accident and alleged that this collision caused her injuries. The defendant sought to present two alternative defensive theories. First, the defendant presented expert testimony that the plaintiff's injuries were degenerative and thus not trauma-related at all. Alternatively, the defendant contended that the second accident caused her injuries. On the plaintiff's pretrial request, and because of the lack of expert testimony supporting the defendant's alternative theory, the trial court excluded all evidence of the second accident on relevance grounds. The trial court rendered judgment on the jury's verdict for the plaintiff, and the court of appeals

affirmed. We hold that evidence of the second accident was relevant to the central issue of whether the defendant's negligence caused the plaintiff's damages. We further hold that the trial court committed harmful error in excluding the evidence, and particularly in refusing to allow cross-examination of the plaintiff's expert on the subject. Accordingly, we reverse the court of appeals' judgment and remand the case for a new trial.

## I. Background

On July 16, 2008, Lauren Garza was traveling south on U.S. Highway 83 in Zapata County when an 18-wheeler driven by a JLG Trucking, LLC employee rear-ended her truck. An ambulance was called to the scene but did not transport Garza to the hospital. Instead, Garza testified that her aunt took her to a nearby emergency clinic where x-rays were taken, although the record contains no medical records from the clinic regarding that visit. Five days later Garza saw an orthopedic surgeon, Dr. Guillermo Pechero, complaining of neck and back pain. An x-ray showed some straightening of the lordotic curve, which Dr. Pechero concluded was associated with muscle spasms in the neck. Dr. Pechero prescribed physical therapy, which Garza underwent for roughly eleven weeks.

On October 9, 2008, shortly after ceasing physical therapy, Garza was involved in a second car accident. She was taken by ambulance from the scene of the accident to a hospital on an immobilization board with a hard collar to prevent movement in her neck. At the hospital, Garza complained of pain in her head, neck, and chest. On October 31, Garza returned to Dr. Pechero for a follow-up visit, complaining of continuous pain in her neck that radiated into her shoulders. Dr. Pechero ordered an MRI, which revealed that Garza had two herniated discs in her neck. Dr.

Pechero began a conservative treatment of primarily medication in hopes of avoiding surgery, but a March 2009 nerve study revealed that a nerve at the site of the herniations had become compressed, and a second MRI in August 2011 showed two additional herniated discs in her neck. Garza underwent spinal fusion surgery in January 2012. The surgery was successful, and at the time of trial Garza was "doing well." However, Garza lives with a scar on her neck, reduced neck mobility, the permanent presence of hardware from the surgery, and the possibility of future surgery.

Garza sued JLG, alleging that the employee driver's negligence proximately caused her injuries and seeking damages for past and future medical expenses, loss of earning capacity, physical pain, mental anguish, physical impairment, and disfigurement.[1] Garza's treating physician, Dr. Pechero, served as her expert witness to testify that the July 2008 accident caused the herniated discs. JLG designated Dr. Bruce Berberian, a neuroradiologist, as its expert witness to testify that Garza was suffering from degeneration of her discs, and not a trauma-related injury at all. JLG also intended to introduce evidence of the October accident as an alternative cause of Garza's injuries, although JLG did not designate an expert to testify in support of that theory.

Garza filed a pretrial motion to exclude any evidence of the second accident on the grounds that such evidence was not relevant, or that its probative value was substantially outweighed by the unfair prejudice or confusion it would cause the jury, because "there is no causal connection between the injuries [Garza] is complaining of and the subsequent collision." After a hearing, the trial court granted Garza's motion to exclude.

---

[1] Garza named the employee as a defendant, but it appears that he was never served with citation. Garza also asserted claims against JLG for negligent entrustment and gross negligence, but those claims were not submitted to the jury.

3

Dr. Pechero testified by deposition at trial that the July accident caused Garza's injuries. He noted that Garza exhibited neck pain after that accident and that the October MRI revealed injuries consistent with a rear-end collision. One portion of the deposition played to the jury contained the following exchange between Dr. Pechero and Garza's counsel:

> Q.　Now, up to this point in the treatment of her you took a history, correct?
>
> A.　Correct.
>
> Q.　And Lauren indicated to you that she had not had any or been involved in any other accidents other than the one from July -- July 16th of 2008; is that correct?
>
> A.　I don't think I asked her one way or the other on that.
>
> . . . .
>
> Q.　Well, you took a history, correct?
>
> A.　Correct.
>
> Q.　All right. And let's take a look at the July 21st note real quick.
>
> A.　Okay. Are you referring to the October note, or the July note?
>
> Q.　The July note.
>
> A.　Oh, okay. In the July note, she did not have any other history of injury.

Taking the position that this testimony opened the door to questions concerning the second accident, JLG renewed its objection to the exclusion of all mention or evidence of that accident. The trial court upheld its earlier exclusion ruling, and JLG submitted an offer of proof as to the testimony that would have been elicited from Dr. Pechero and the evidence that would have been presented in

support of the second accident as an alternative cause. JLG's offer of proof included the police report regarding the second accident, photos of Garza's vehicle after the second accident, medical records documenting Garza's emergency treatment after that accident, and Dr. Pechero's testimony that he had not reviewed those medical records. Garza responded with an offer of proof consisting of Dr. Pechero's testimony that he had relied on Dr. Berberian's testimony that the second accident did not cause Garza's injuries to rule out that possibility. The jury found that JLG's employee's negligence proximately caused the July accident and awarded her $1,166,264.48 in damages.[2]

JLG appealed the trial court's judgment on the verdict, arguing that evidence of the second accident was relevant and that its exclusion amounted to harmful error because it prevented JLG from holding Garza to her burden of proving that JLG caused her injuries. The court of appeals affirmed, holding that the trial court did not abuse its discretion in excluding evidence of the second accident because "expert testimony would be required to establish any . . . causal link between the second collision and Garza's injuries." __ S.W.3d __, __ (Tex. App.—San Antonio 2013).

## II. Analysis

We review a trial court's exclusion of evidence for an abuse of discretion. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). Erroneous exclusion of evidence is reversible only if it probably resulted in an improper judgment. *Id.*; TEX. R. APP. P. 44.1(a)(1).

---

[2] The jury awarded $108,135.48 for past medical expenses, $110,000.00 for future medical expenses, $583,693.00 for future loss of earning capacity, $42,048.00 for past physical pain, $252,288.00 for future physical pain, $5,000.00 for past physical impairment, $57,600.00 for future physical impairment, and $7,500.00 for future disfigurement. The jury awarded $0 for past loss of earning capacity, past and future mental anguish, and past disfigurement.

In this case, the disputed evidence was excluded as irrelevant, and so the rules of evidence governing relevance are the starting point of our analysis.

## A. Evidence of the Second Accident Is Relevant to the Issue of Causation

Rule 401 broadly defines relevant evidence to include "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Evidence that is not relevant is inadmissible, while relevant evidence is admissible unless otherwise excluded by law. TEX. R. EVID. 402. Relevance also governs the scope of cross-examination in Texas, as the rules allow witnesses to be cross-examined "on any matter relevant to any issue in the case." TEX. R. EVID. 611(b). And it is well established that "any fact which bears upon the credit of a witness would be a relevant fact, . . . whether it goes to his indisposition to tell the truth, his want of opportunity to know the truth, his bias, interest, want of memory, or other like fact." *Evansich v. Gulf, C. & Santa Fe R.R. Co.*, 61 Tex. 24, 28 (1884). Finally, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." TEX. R. EVID. 403.

JLG argues that evidence of the second accident is relevant to the causation element of Garza's negligence claim. We agree. Establishing causation in a personal injury case requires a plaintiff to "prove that the conduct of the defendant caused an event and that this event caused the plaintiff to suffer compensable injuries." *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). For example, when an accident victim seeks to recover medical expenses, she must show both "what all the conditions were" that generated the expenses and "that all the conditions

6

were caused by the accident." *Guevara v. Ferrer*, 247 S.W.3d 662, 669 (Tex. 2007). Further, "expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." *Id.* at 665. Finally, we have held that "if evidence presents 'other plausible causes of the injury or condition that could be negated, the [proponent of the testimony] must offer evidence excluding those causes with reasonable certainty.'" *Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 218 (Tex. 2010) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997) (alteration in *Crump*) (emphasis in *Crump* omitted)); *see also Harris v. Belue*, 974 S.W.2d 386, 393–94 (Tex. App.—Tyler 1998, pet. denied) (rejecting the argument that the plaintiff failed to negate other probable causes of her injury in light of the lack of factual support in the record for those proposed causes).

In this case, Garza sought to prove that the negligence of JLG's employee caused the July accident. She also sought to prove by expert testimony from Dr. Pechero that this accident caused the herniated discs in her neck along with all of the associated pain, medical expenses,[3] loss of earning capacity, impairment, and disfigurement. JLG sought to undermine Garza's theory and Dr. Pechero's testimony by presenting evidence of the October 2008 accident as an alternative cause of those injuries. Garza argues that the record does not support a connection between the October accident and her injuries, rendering the evidence properly excluded.

Garza relies in part on *Farmers Texas County Mutual Insurance Co. v. Pagan*, 453 S.W.3d 454 (Tex. App.—Houston [14th Dist.] 2014, no pet.). In *Pagan*, the plaintiff alleged that various

---

[3] Garza did not seek to recover medical expenses associated with her emergency treatment immediately after the second accident.

neck and shoulder injuries were caused by a March 2008 car accident. *Id.* at 458. The defendant sought to introduce evidence of an April 2009 "horse incident,"[4] which the trial court excluded. *Id.* at 459–60. The court of appeals affirmed, holding that the trial court "could reasonably conclude that informing the jury about a horse incident with no apparent connection to the lasting injuries at issue in this case would confuse the issues and mislead the jury." *Id.* at 463. The court noted in pertinent part that (1) the interrogatory response in which Pagan identified the horse incident did not mention any resulting neck or shoulder injuries, (2) the medical records associated with the incident noted only "contusions" resulting from the fall, and x-rays showed that her spine and shoulders were normal, and (3) records from Pagan's family doctor indicating that she complained of neck and shoulder pain at a visit after the horse incident did not reference the incident itself. *Id.*

Regardless of whether *Pagan* was correctly decided, which we need not address, the evidence of a connection between the proposed alternative cause and the plaintiff's injuries that the court found lacking in *Pagan* is present in this case. JLG's offer of proof indicates that, as a direct result of the second accident, Garza was transported to a hospital on an immobilization board and constrained with a hard c-collar around her neck, she complained of neck pain once she arrived, and she returned to Dr. Pechero three weeks later for the first time since the conclusion of her physical therapy with complaints of continuous pain in her neck radiating into her shoulder. At that time, the MRI revealed the herniated discs. The circumstances surrounding the second accident and its

---

[4] The evidence of the facts surrounding that incident is inconsistent. Some evidence indicates that Pagan fell off a horse, other evidence indicates that she was "trampled," and still other evidence indicates that she fell while leading the horse on foot. 453 S.W.3d at 459–60.

8

aftermath provide the necessary factual support to present the second accident as a "plausible cause" of Garza's injuries.[5]

Significantly, the exclusion of the second accident curtailed JLG's ability to probe Dr. Pechero's conclusions about causation by asking him to explain why he discounted the second accident as an alternative cause. JLG's offer of proof shows that, in formulating his opinion, Dr. Pechero did not review the records from Garza's emergency treatment after the second accident, which included the statements reflecting that Garza was experiencing neck pain in its wake. According to Garza's responsive offer of proof, Dr. Pechero's only explanation for ruling out the second accident as the cause of the herniations was that he relied on Dr. Berberian's testimony to that effect. But Dr. Berberian concluded that *neither* accident caused Garza's injuries, calling into question the credibility of the methods underlying Dr. Pechero's approach. *Cf. E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 559 (Tex. 1995) (upholding the exclusion of expert testimony when the expert failed to "carefully consider [and rule out] alternative causes");[6] *see also* TEX. R. EVID. 607 ("The credibility of a witness may be attacked by any party . . . ."). JLG could not adequately cross-examine Dr. Pechero on those methods without discussing the improperly excluded evidence.

---

[5] Certainly, expert testimony in support of the alternative cause would lend support to its plausibility. And in some cases, expert testimony may in fact be necessary to elevate a proposed alternative cause from theoretically possible to plausible. But this is not that case.

[6] JLG did not move to exclude Dr. Pechero's testimony in the trial court. We cite *Robinson* because it highlights the significance of alternative causes when a plaintiff must prove causation by expert testimony.

**B. The Court of Appeals Erroneously Conflated Relevance and Evidentiary Sufficiency**

The court of appeals held that the trial court correctly excluded evidence of the second accident because "no expert testimony was proffered to establish that the second collision caused any of Garza's injuries." __ S.W.3d at __. As support for its holding, the court of appeals relied on a line of cases addressing the necessity of expert medical testimony to prove causation in the personal-injury context. As discussed below, in doing so the court of appeals conflated the concepts of relevance and evidentiary sufficiency and improperly shifted the burden of proof to the defendant.

Principal among the cases cited by the court of appeals was *Guevara v. Ferrer*, 247 S.W.3d 662 (Tex. 2007). That case, like this one, involved a car accident that a jury found the defendant caused. *Id.* at 663, 665. The plaintiff, who had a complicated medical history that included hypertension, heart disease, and kidney failure, complained of stomach pains and received emergency treatment, including abdominal surgery, immediately after the accident. *Id.* at 663–64. Following that surgery, he spent three-and-a-half months in the hospital, two weeks in a continuing care facility, and two more weeks in another medical facility. *Id.* at 664. His family sought to recover all the medical bills generated by his stays at the hospital and both facilities, which exceeded $1 million, but did not present expert medical evidence to prove that the accident caused those expenses to be incurred. *Id.* at 664–65. We held that, while "the evidence [was] legally sufficient to support a finding that *some* of his medical expenses [such as those associated with his post-accident treatment in the emergency room] were causally related to the accident," it was "not legally sufficient to prove what the conditions were that generated *all* the medical expenses or that the

10

accident caused *all* of the conditions and the expenses for their treatment." *Id.* at 669–70 (emphases added).

In *Guevara*, we applied the well-established general rule, cited above, that "expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." *Id.* at 665 (citing cases). And we did so in the context of considering the legal sufficiency of non-expert evidence to support a finding of causation. But we did not hold that the lack of expert testimony rendered any of the evidence irrelevant or otherwise admissible. In fact, relevance was not at issue in *Guevara*.[7] In this case, although the court of appeals was purporting to analyze relevance, in effect it was improperly analyzing whether the evidence was legally sufficient to support a finding that the second accident caused Garza's injuries. But JLG did not have the burden to prove causation; Garza did. It was Garza's burden to prove that the first accident caused her injuries, and, as discussed above, the record in this case sufficiently demonstrates that the second accident is at least relevant to that inquiry even without an expert proponent.

Further, JLG did not rule out the relevance of the second accident by presenting expert testimony that Garza's injuries were degenerative and not trauma-induced. Parties may plead conflicting claims and defenses in the alternative so long as they have a "reasonable basis in fact [and] law." *Low v. Henry*, 221 S.W.3d 609, 615 (Tex. 2007). In turn, parties may present evidence of alternative, and even inconsistent, theories of relief, leaving to the jury to "choose the theory that it believes based upon its resolution of the conflicting evidence." *Wilson v. Whetstone*, No. 03-08-

---

[7] We did confirm in *Guevara* that "evidence of temporal proximity . . . between an event and subsequently manifested conditions" is not irrelevant to causation, although "temporal proximity . . . does not, by itself, support an inference of medical causation." 247 S.W.3d at 667–68.

00738-CV, 2010 WL 1633087, at *10 (Tex. App.—Austin April 20, 2010, pet. denied) (mem. op.) (holding that the plaintiff's claim and evidence of the parties' acquiescence to the alleged property boundary line were not fatal to her adverse possession claim, even assuming that the claims were mutually exclusive); *see also In re Arthur Andersen LLP*, 121 S.W.3d 471, 482 n.32 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (noting that a defendant could deny liability for conspiracy while simultaneously alleging that third parties were also liable for conspiracy). But the burden still falls on the plaintiff to establish the elements of her cause of action.

In this case, as explained above, the burden was on Garza, the plaintiff, to establish both that JLG caused the July 2008 accident and that this accident caused her injuries. Part of that burden was to exclude with reasonable certainty other plausible causes of her injuries supported by the record. *Crump*, 330 S.W.3d at 218. JLG's decision to present Dr. Berberian's testimony in support of its theory that Garza's injuries were degenerative—which the jury apparently found unpersuasive—did not relieve Garza of that burden. The defendant's responsibility "is not that of proving, but the purely negative one of repelling or making ineffective the adversary's attempts to prove." James B. Thayer, *The Burden of Proof*, 4 HARV. L. REV. 45, 56 (1890). In its efforts to repel Garza's attempts to prove her case, JLG was entitled to present evidence of the second accident to the jury, which was relevant to Garza's theory of causation irrespective of Dr. Berberian's testimony. The trial court therefore abused its discretion in excluding that evidence.

### C. Reversible Error

The trial court's error in excluding evidence of the second accident is reversible only if it probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a)(1). We have

12

declined to establish any "specific test" for determining whether evidentiary error resulted in an improper judgment, but we have held that the appellate court must review the entire record, "considering the state of the evidence, the strength and weakness of the case, and the verdict." *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008) (internal quotation marks and citation omitted). We explained in *Sevcik* that "if erroneously admitted or excluded evidence was crucial to a key issue, the error was likely harmful." *Id.* at 873. "By contrast, admission or exclusion is likely harmless if the evidence was cumulative, or if the rest of the evidence was so one-sided that the error likely made no difference." *Id.* In this case, the evidence of the second accident was crucial to whether JLG's negligence caused Garza's injuries, and the harm in its exclusion was compounded by JLG's curtailed cross-examination of Dr. Pechero. Accordingly, we hold that the trial court's exclusion of evidence regarding the second accident was reversible error requiring a new trial.[8]

### III. Conclusion

The trial court abused its discretion in excluding evidence of the second accident, which was relevant to whether JLG's negligence caused Garza's damages. Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court for a new trial in accordance with this opinion.

---

[8] JLG did not contest on appeal the finding that its negligence caused the first accident. It asserted only that the erroneously excluded evidence tainted the findings as to the damages caused by that accident. However, because liability was contested in the trial court, both liability and damages must be remanded. *Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001) (per curiam) (applying TEX. R. APP. P. 44.1(b)).

13

_____

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** April 24, 2015