**Affirmed and Memorandum Opinion filed March 5, 2024.**



In The

# 𝕴𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-23-00338-CV

**JACQUELINE TRINH, Appellant**

**V.**

**JENNY ZAYAS-NIUBO, Appellee**

**On Appeal from the County Civil Court at Law No. 1
Harris County, Texas
Trial Court Cause No. 1108804**

## M E M O R A N D U M   O P I N I O N

In this personal-injury case arising from a motor-vehicle accident, the defendant argues that the evidence is legally and factually insufficient to support the jury's assessment of past and future medical expenses because the plaintiff's medical expert offered only conclusory testimony on the subjects of causation and the need to incur those expenses. We affirm.

# I. BACKGROUND

On March 6, 2017, Jenny Zayas-Niubo was delivering auto parts in the company van for her employer. At an intersection with the green light facing her, Zayas-Niubo had begun to turn right when a pedestrian stepped into the crosswalk in front of the van. She braked immediately. Jacqueline Trinh was in the vehicle behind Zayas-Niubo, and although Trinh swerved to the left to try to avoid hitting Zayas-Niubo, she was unable to stop in time, and the right side of Trinh's vehicle struck the left back of the van Zayas-Niubo was driving. The investigating officer concluded that Trinh caused the accident by failing to control her speed.

Zayas-Niubo first went to the health care provider specified by her employer, who required its employees to submit to a drug test by a specific provider after an accident. For treatment, however, Zayas-Niubo could choose her own health care provider, and she looked for a chiropractor near her work. Two days after the accident she began treatment at Texas Alliance Medical Group where she was seen by chiropractor Dr. Cynthia Ketterer. Zayas-Niubo complained of pain in her cervical, thoracic, and lumbar spine and in her right hand and wrist. Dr. Ketterer prescribed medication and began treating Zayas-Niubo with electrical muscle stimulation, traction, manipulation, and myofascial release.

When these treatments did not resolve Zayas-Niubo's radiating pain or the pain in her cervical spine, she saw Dr. Shabrez Tariq, a specialist in pain management at the same practice group. Dr. Tariq recommended cervical medial branch nerve blocks. Separate procedures were performed on Zayas-Niubo's left and right cervical spine, and although the procedures themselves were painful, they provided temporary relief. According to Zayas-Niubo, Dr. Tariq recommended that she have another type of procedure that would burn away the irritated nerves, but he

pointed out that Zayas-Niubo already owed the practice a considerable amount. Zayas-Niubo concluded that she could not afford the procedure.

The relief from the nerve blocks wore off, and when the pain returned, Zayas-Niubo resumed chiropractic treatment with Dr. Ketterer until the pain subsided again. Eventually, the pain returned, but she did not resume treatment because her medical bills remained outstanding.

Zayas-Niubo sued Trinh for negligence and negligence per se. Both women testified at the jury trial, as did Dr. Tariq and the police officer who investigated the accident. The jury found that Trinh proximately caused the accident and that Zayas-Niubo incurred past medical expenses of $36,539 and in reasonable probability would incur future medical expenses of $173,130. The trial court rendered a corrected final judgment in accordance with the verdict and allowed Trinh's motion for judgment notwithstanding the verdict or for new trial to be overruled by operation of law.

## II. ISSUE

In a single issue, Trinh argues that the evidence is legally and factually insufficient to support the damages awarded because Dr. Tariq offered only conclusory testimony on the subjects of causation and on the need to incur past and future medical expenses.

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *See id.* at 827. We will overrule a legal sufficiency challenge unless (a) there is a complete

3

lack of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) there is no more than a mere scintilla of evidence to prove a vital fact, or (d) the evidence conclusively established the opposite of a vital fact. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 903 (Tex. 2004).

When reviewing the factual sufficiency of the evidence, we examine the entire record, considering all the evidence both in favor of and contrary to the finding. *Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 723 (Tex. App.—Houston [14th Dist.] 2017, no pet.). If the appellant did not have the burden to prove the finding, then we will set aside the finding on factual-sufficiency grounds only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Bennett v. Comm'n for Lawyer Discipline*, 489 S.W.3d 58, 66 (Tex. App.— Houston [14th Dist.] 2016, no pet.).

Whether reviewing for legal or factual sufficiency, "the jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We may not pass upon the witnesses' credibility or substitute our judgment for that of the factfinder, even if the evidence would support a different result. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 615–16 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). As a result, less evidence is necessary to affirm than to reverse a judgment. *Id.* at 616.

### III.  EVIDENCE OF CAUSATION

To establish causation in a personal-injury case, the plaintiff must "prove that the conduct of the defendant caused an event and that this event caused the plaintiff to suffer compensable injuries." *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 162 (Tex. 2015) (quoting *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.

4

1995)). When medical expenses are at issue, the plaintiff must show "'what all the conditions were' that generated the expenses and 'that all the conditions were caused by the accident.'" *Id.* (quoting *Guevara v. Ferrer,* 247 S.W.3d 662, 669 (Tex. 2007)). To prove causation of medical conditions outside the common knowledge and experience of laymen, expert testimony is required. *Guevara*, 247 S.W.3d at 665.

Trinh contends that Dr. Tariq's causation testimony is conclusory, and thus, the evidence is legally and factually insufficient to support an award of part of Zayas-Niubo's past medical expenses[1] and all of her future medical expenses. *See Windrum v. Kareh*, 581 S.W.3d 761, 770 (Tex. 2019) (conclusory testimony is no evidence). Trinh offered no evidence controverting Dr. Tariq's testimony, and she did not object in the trial court to Dr. Tariq's methodology or the test results on which he relied; however, a complaint that testimony is conclusory can be raised for the first time on appeal. *See id.* An expert's opinion testimony is conclusory if the expert offers no basis for the opinion, or if the bases offered either do not exist, or do not support the opinion, or the jury has only the expert's word that the bases exist or that the bases support the opinion. *See id.* at 769.

Trinh contends that Dr. Tariq's causation testimony is conclusory because he did not explain the nexus between the accident and the injuries treated. We disagree.

Dr. Tariq stated that he considered Zayas-Niubo's subjective reports of pain, the history of her complaint, her past medical history, the possible sources of pain, her physical examination, and MRI studies. Dr. Tariq explained that when someone

---

[1] Trinh does not challenge the award of past amounts Zayas-Niubo incurred for chiropractic treatment, prescription medications, imaging, the initial visit with Dr. Tariq, and Dr. Tariq's orthopedic report. She does challenge the amounts incurred for medial branch nerve blocks. Although she does not expressly state that she challenges the expense incurred for Zayas-Niubo's second office visit with Dr. Tariq, she has included the amount charged for that visit in the challenged past medical expenses. She does not explain the distinction she has drawn between the challenged and the unchallenged past medical expenses.

5

is injured in a motor vehicle accident, the person can experience pain arising from muscles, ligaments, or structures of the spine such as facet joints and discs. He testified that the occupant of a vehicle struck from behind is more likely to be injured if the person's neck is turned to one side, because torque is applied to the facet joint capsule.

He found such injuries here. Using visual aids, Dr. Tariq explained the anatomy of the cervical spine to the jury, identifying the vertebra, the facet joints, the discs, and the spinal nerves. He stated that the discs in the spine have two parts: the annulus fibrosus is the outer part, and the inner part is the nucleus pulposus. When the annulus fibrosus is torn, the nucleus pulposus can leak out. The tear leads to inflammation, and the nerves along the outside of the disc can also be injured.

When conservative treatment did not resolve Zayas-Niubo's pain after about six weeks, Dr. Tariq recommended an MRI of her cervical spine, and the MRI revealed multiple herniated discs, one of which had an annular tear. Coincidentally, Zayas-Niubo had an MRI of her cervical spine about six months before the accident, and although that MRI revealed the multilevel cervical-disc herniations, there were no annular tears.[2] Dr. Tariq concluded that the accident caused the tear, and the tear was causing part of Zayas-Niubo's pain.

But the annular tear was not the only source of Zayas-Niubo's post-accident pain. In addition to pain in her cervical spine, Zayas-Niubo had shooting pains down her right arm to her wrist and hand, which Dr. Tariq diagnosed as cervical radiculopathy. There is no evidence that she had such pain before the accident. Dr. Tariq explained that this radiating type of pain can indicate that a disc herniation is irritating the nerves supplying the neck and arm, but that cervical facet joints also

---

[2] Dr. Tariq discussed only the tear at C6-C7, but a comparison of the two MRI reports shows there was also a new annular tear at C3-C4.

can cause referred pain from the neck to the arm. To determine whether this pain originated from a disc or facet joint, Dr. Tariq performed separate medial branch nerve block procedures on the left and right side of Zayas-Niubo's cervical spine. He explained that this procedure has both a diagnostic and therapeutic purpose, for if blocking these nerves stops the pain, then the pain is originating from a facet joint rather than a disc. In Zayas-Niubo's case, blocking these nerves significantly improved Zayas-Niubo's pain temporarily, so Dr. Tariq concluded that Zayas-Niubo's radiating pain arose from the facet joints.

Trinh asserts that Dr. Tariq's causation opinion is nevertheless conclusory because it is based solely on the appearance of a new annular tear after the accident. Although temporal proximity alone is insufficient to establish causation, it can be probative when combined with other causation evidence. *Guevara*, 247 S.W.3d at 668. Here, there is ample other evidence.

For example, Dr. Tariq explained the mechanism of injury, that is, torque makes injury to the neck more likely in a rear-end collision if the leading vehicle's occupant's neck is turned to one side. And according to Zayas-Niubo, that is exactly what happened. She stated that her body and her neck were turned to the right when the accident occurred. As Zayas-Niubo described it, "I just kind of feel like a crack. And my head goes back and it goes forward. And at that moment, I was thinking oh, my neck already cracked." She stated that "felt an intense pain" in her neck, and she exited the car holding her head in her right hand. Zayas-Niubo's subjective experience of pain beginning at the moment of impact is consistent with Dr. Tariq's explanation of the mechanism of injury.

Moreover, Dr. Tariq stated that in circumstances such as those presented in this accident, torque is applied to the facet joint capsule, and the medial branch blocks confirmed that Zayas-Niubo's radiating pain originated at the facet joint. As

7

for the pain in the cervical spine itself, the MRI provided objective evidence of a new injury in the form of an annular tear.

Viewed in the light most favorable to the verdict, the foregoing is legally sufficient evidence that the accident caused Zayas-Niubo to sustain compensable injuries. Viewing the entire record in a neutral light, the jury's causation finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Thus, there is legally and factually sufficient evidence of causation.

## IV. EVIDENCE OF NECESSITY

Although not raised in separate issues, Trinh makes a few additional arguments, discussed below, that are specific to future medical expenses.

Trinh asserts that Dr. Tariq's testimony on the necessity for future medical care is conclusory because (a) Dr. Tariq admitted that he would normally indicate the need for future treatment in the medical notes and that he did not do so here; and (b) by the time of trial, it had been more than five years since Dr. Tariq last treated Zayas-Niubo, and he based his recommendations for future treatment on a conversation he had with Zayas-Niubo just a few days before trial. These factors do not render Dr. Tariq's necessity testimony conclusory; they are simply matters for the jury to consider in evaluating Dr. Tariq's credibility and determining the weight to give his testimony. Zayas-Niubo testified that she still suffers so much pain from the injuries she sustained in the accident that she has prayed to God to take her life. She stated that she had to give up her dream of obtaining a commercial driver's license because she cannot turn her head all the way to the right or left. She explained that when she tries to grab something, she feels a pain like needles pinching her, and she described an occasion when she nearly dropped her two-month-old grandchild because her left arm was not responding properly.

8

In offering his opinion about the cost to treat Zayas-Niubo's continuing pain, Dr. Tariq relied on the Center for Disease Control's National Vital Statistics Report, which indicated that Zayas-Niubo would live for another twenty-eight years from the time of trial, and he based his opinions on the cost of future treatments on this life-expectancy. Regarding the annular tear, Dr. Tariq testified that this would eventually heal on its own, but the healed area does not consist of "normal tissue," and it can still cause pain. To treat this pain, Dr. Tariq recommended epidural steroid injections, which provide relief for three to twelve months. He charges $7,000 to $9,000 for this procedure, depending on the levels of the spine involved, and he opined that these are the usual, customary, and reasonable charges for this service in the Houston area. Dr. Tariq testified that Zayas-Niubo would need three injections every five years, for a total of about $105,000, but at a minimum, she would need injections once every five years, at a total cost of about $35,000. As for the facet-joint pain, Dr. Tariq stated that the medial branch nerve blocks provide relief for a period that can be as short as three days or as long as several months. To afford Zayas-Niubo more long-lasting relief from facet-joint pain, Dr. Tariq proposed periodic radiofrequency ablation, burning away the irritated medial branch nerves from the cervical spine and repeating the procedure when the nerves grow back. Dr. Tariq testified that Zayas-Niubo would need radiofrequency ablation at least once every five years on at least one side of her neck, paying around $13,000 or $13,500 each time, but she might need two or three ablations every five years on both sides of her neck at a cost of around $27,000 each time. He estimated that the cost of treating Zayas-Niubo's facet-joint pain in the future would be about $138,000. Again, he testified to the reasonableness of the costs for these procedures.

The total amount that the jury assessed for Zayas-Niubo's future accident-related medical care is within the range of values Dr. Tariq suggested, and there was

9

no controverting evidence as to the need for these treatments or the cost. We therefore conclude that, whether viewed in the light most favorable to the verdict or viewed in a neutral light, the evidence supports the jury's finding.

## V. CONCLUSION

Dr. Tariq's testimony on causation and on Zayas-Niubo's need to incur her past and future accident-related medical expenses is not conclusory. Because his testimony is instead legally and factually sufficient to support the verdict, we overrule the sole issue presented and affirm the trial court's judgment.


/s/     Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.