**Affirmed and Memorandum Opinion filed August 20, 2024.**



In The

# Fourteenth Court of Appeals

## NO. 14-23-00540-CV

## IN RE THE COMMITMENT OF MICHAEL PAUL REEDER

**On Appeal from the 339th District Court
Harris County, Texas
Trial Court Cause No. 0808140-0101Z**

## M E M O R A N D U M   O P I N I O N

Michael Paul Reeder appeals his civil commitment under the sexually violent predator statute (the "SVP statute"). *See* Tex. Health & Safety Code §§ 841.001-.209. To show that a person is a sexually violent predator, the State must prove that the person (1) is a repeat sexually violent offender and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a). Reeder contends the trial court reversibly erred when it prevented him from inquiring into a single topic on cross-examination of the State's expert witness regarding her diagnosis of pedophilic disorder. We affirm.

# Background

The State filed a petition seeking Reeder's civil commitment as a sexually violent predator. At Reeder's jury trial, two witnesses testified: Dr. Christine Reed, a clinical and forensic psychologist, and Reeder. The State also presented evidence of Reeder's criminal history, including an indecency-with-a-child conviction for touching his five-year-old cousin's penis when Reeder was eighteen and two convictions for aggravated sexual assault of a child involving two prepubescent girls, eleven-year-old "Lucy" and thirteen-year-old "Allison,"[1] that occurred when Reeder was thirty-three or thirty-four years old. At the time of these proceedings, Reeder was incarcerated for the offense against Allison, which occurred in 1998 but for which he was convicted in February 2009.

Dr. Reed testified that she evaluated Reeder and opined that he suffers from a behavioral abnormality making him likely to engage in predatory acts of sexual violence. Specifically, Dr. Reed diagnosed Reeder with "pedophilic disorder, non-exclusive type," which she described as a congenital or acquired condition. She also diagnosed him with "unspecified personality disorder with antisocial and borderline features." According to Dr. Reed, Reeder exhibited numerous risk factors for recidivism, based on her diagnoses and Reeder's history. Dr. Reed based her opinions on meeting with Reeder and reviewing Reeder's prison, medical, and school records, as well as a recent deposition of Reeder.

Dr. Reed described the support for her diagnoses and opinions as follows:

> Well, as I just said, pedophilic disorder is considered to be a chronic disorder, a long-lasting disorder that you may see indications of, you know, ongoing throughout their lifetime. You add that to his admission to me that just within the last few months he has had sexual thoughts or fantasies about the victims, suggest that it was recent. And just because

---

[1] We use pseudonyms to refer to all the minors in this opinion. *See* Tex. R. App. P. 9.9.

2

he hasn't had any underaged victims since he's been incarcerated, isn't really indicative of his overall behavior because he's incarcerated.

In other words, he doesn't have access to prepubescent children while he's in prison. . . .

He belonged to a satanic church. That he was a Satan worshiper and that they engaged in orgies [that included young children]. . . . And that he participated in these orgies as well. . . .

He told me he used to feel controlled by his sexual desires. He's described having problems with compulsive masturbation. He's even asked the medical providers in the prison for help for compulsions with masturbation. He's described, for example, masturbating every day, three to four times a day at most – you know, at its peak.

Masturbates to the thoughts of the victims. He's engaged in a number of different sexually deviant acts over the years. Starting as early as around kindergarten or first grade, he was reaching up the girls' dresses and got suspended, he says, from school for doing that. At age -- either -- he told one evaluator at age 5 or 6. He told me around age 8 or 9 was the first time he had sexual intercourse with someone and that was his cousin, his female, same aged cousin. That they engaged in intercourse, engaged in oral sex, starting at a very young age of 8.

That he started looking up pornography even at that age and it became a regular thing where he was -- he felt he had a problem with pornography. He was looking at it on a daily basis.

He talked about engaging in sexual contact with his sister beginning at around age 8 or 9. That they had sexual contact two or three times.

He talked about trying to see the girls in the bathroom at school while they were using the bathroom. He talked about in addition to his interest in pornography, reading incest-themed kind of books or storybooks that he had stolen. . . .

And then we talked about the orgies that he participated in as well.

So I think it's safe to say that he definitely has sexual deviance and overall a history of sexual preoccupation.

During Dr. Reed's direct examination, she testified about a discussion she had with Reeder regarding his sexual assault of thirteen-year-old Allison. According to Dr. Reed, Reeder was sexually attracted to Allison and was aware that she had been sexually abused previously—he "used that information against her" and described himself as "an emotional con man" by doing so.

Later, when Reeder's counsel cross-examined Dr. Reed, the following exchange occurred:

> [Reeder's Counsel]: Now, with the offenses against the girls, Dr. Reed, you testified earlier – let's just start with [Lucy].
>
> With [Lucy] . . . it appears that she was maybe 11 when the outcry occurred? Does that sound about right based on the records?
>
> [Dr. Reed]: Right. But she would have been, according to the records, 9 when it started, but about 11 when she made the outcry, correct.
>
> [Reeder's Counsel]: And [Allison] would have been around 13 at the time of the offenses related to her?
>
> [Dr. Reed]: Yes.
>
> [Reeder's Counsel]: Okay. Now, as it relates to [Lucy] specifically, do the records reflect that [Lucy] was actually being sexual abused by her parents as well?
>
> [Special Prosecutor]: Objection to relevance.
>
> [Reeder's Counsel]: Your Honor, I believe it's going to tie directly into Dr. Reed's diagnosis of pedophilia and the fact that we were dealing with a prepubescent child. So I'm just trying to develop that line of questioning.
>
> THE COURT: I'm going to sustain it at this time.
>
> [Reeder's Counsel]: Okay. Thank you, Judge.

Reeder's counsel provided no more information regarding the substance of the testimony she expected to elicit from this line of questioning. Counsel's cross-examination of Dr. Reed encompasses over thirty pages of the reporter's record *after*

4

this objection was overruled and covers a variety of topics related to Dr. Reed's diagnoses, including her diagnosis of pedophilic disorder.[2]

Reeder's testimony was largely in accord with the history and details that Dr. Reed provided. He testified that he became sexually active when he was "[y]oung. 8, 9, 10 [years old]." He had gotten in trouble in the first grade for reaching "up girls' dresses to touch their panties." Reeder also began looking at pornography when he was between seven and nine years old, he looked at it on a daily basis and had a "problem with looking at pornography too much," and he began masturbating at around age ten and became "addicted" to it, masturbating for up to five times a day for around "30 years." He was around eight or nine years old when he first had sexual intercourse with a female cousin.

Reeder joined a satanic cult when he was a young adult, and he acknowledged that he participated in orgies, which included very young children, while he was a

---

[2] Specifically, the following exchange between Reeder's counsel and Dr. Reed occurred shortly after the trial court sustained the State's relevance objection:

Q. Okay. So could you go over again, Dr. Reed, what the definition is for pedophilic disorder?

A. Sure. So a pedophilic disorder is over a period of at least six months, recurrent, intense, sexually arousing fantasies, sexual urges or behaviors involving someone who is prepubescent, meaning before the onset of puberty, which is generally considered to be 13 or younger.

Q. What did the records indicate to you specifically related to [Allison] and [Lucy] about their maturity, their physical maturity?

A. I know that [Lucy] was 11 and [Allison] was 13. I don't remember if there was any description in detail further than that. . . .

Q. So is your testimony that you didn't recall if there were any physical descriptions or that they weren't there?

A. It's my testimony that I don't recall any physical descriptions.

Q. Okay. And once again, prepubescent age is that usually under the age of 13, generally speaking?

A. The DSM notes 13 years or younger.

member of the cult. He agreed that he suffers from a "sexual addiction," which he "ha[s]n't been able to get rid of . . . yet."

When he was eighteen years old, Reeder committed a sexual offense against his five-year-old male cousin. When asked why he engaged in sexual contact with his cousin, he responded, "I don't know." He pleaded guilty to the offense of indecency with a child and was placed on probation for seven years for that offense. He violated the terms of his probation several times, spending several months in jail for various offenses he committed while on probation. While he was on probation, he also was convicted of aggravated assault and sentenced to six years in prison for that offense. He was released on parole after about five and one-half years and almost immediately violated the terms of his parole, spending an additional three months in jail for parole violations.

When Reeder was around twenty-seven years old, he began spending time with Lucy and her mother. Lucy was a family friend who came over to his home to play with his son. During a visit one day, Reeder touched Lucy's vagina with his penis. According to Reeder, at the time of this offense, Lucy was around ten years old and he was thirty-four or thirty-five. He had Lucy perform oral sex on him and fondle his penis, although he stated that he only sexually assaulted her "about twice." When asked why he sexually assaulted Lucy, Reeder responded, "I don't know." Reeder pleaded guilty to sexual assault of Lucy and was sentenced to thirty years' confinement. While in prison, he "masturbated to thoughts of [Lucy]."

Around the same time that he sexually assaulted Lucy, Reeder also sexually assaulted Allison. According to Reeder, he and Allison had "intercourse one time and it was just . . . oral sex . . . the other times." When asked why he sexually assaulted Allison, Reeder responded, "Because I was screwed up in the head." Reeder was "infatuated" with Allison and wanted to marry her. Reeder pleaded

6

guilty to aggravated sexual assault of a child for offending against Allison and was sentenced to ten years in prison.[3]

At the time he committed the sexual offenses against Lucy and Allison, Reeder was married and the father of a toddler and a baby. In this same timeframe, he was charged with assault against Allison's twelve-year-old sister, "Jeanette," for "touching her bottom." He pleaded guilty to that offense, as well. He was exchanging "love letters" with Jeanette, telling her how much he loved her and wanted to hold and kiss her. He bought "all of those women" (Lucy, Allison, and Jeanette) flowers. Reeder kissed Jeanette on multiple occasions, "snuggled" with her, and had her sit on his lap. He was attracted to and infatuated with Jeanette.

Reeder agreed that he had a history of alcohol and substance abuse. He had been diagnosed with schizophrenia while in prison, and he had had thoughts about doing "nasty" things to people who made him angry since he was around twelve or thirteen years old. He also attempted suicide and engaged in forms of self-harm.

At the time of trial, Reeder was enrolled in an eighteen-month sex offender treatment program. Regarding this program, when asked about how long it will take to discover why he sexually offends, he responded, "It may not take all my life to figure it out, but it may take all my life to keep it under control." Reeder explained that, although he still is occasionally "preoccupied" with sex, he has learned to "divert" his attention to other things that interest him. He stated he was glad that he was arrested for the sexual offenses because he used to feel "controlled" by his sexual desires. He has learned that he suffers from "lustful" thinking errors, including "perverted thoughts." He identified "vulnerable girls that want to talk" as

---

[3] As noted above, although this offense occurred in 1998, Reeder pleaded guilty and was sentenced for this offense in February 2009, and, at the time of these proceedings, he remained incarcerated for this offense.

one of his triggers, as well as "teens that are looking for affection and attention." He acknowledged being attracted to some children, "like the girls that I'm in here . . . for." He stated that it has been "a year or so" since he last fantasized about any of his victims. When asked about his risk for reoffending, he responded, "I don't say it's high but I don't say it's low."

After hearing the evidence and argument of counsel, a jury found, beyond a reasonable doubt, that Reeder is a sexually violent predator. The trial court signed a final judgment in accord with the jury's verdict, as well as an order committing Reeder to a residential facility for sex offender treatment, subject to a biennial review. Reeder filed a motion for new trial, which was denied by operation of law.

Reeder timely appealed.

## Analysis

In his sole appellate issue, Reeder contends the "trial court reversibly erred when it prevented [him] from cross-examining the State's expert witness as to her diagnosis of pedophilic disorder." The record does not support Reeder's contention.

We review the trial court's exclusion of evidence for an abuse of discretion. *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142 (Tex. 2016); *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 161 (Tex. 2015). The erroneous exclusion of evidence is reversible only if it probably resulted in an improper judgment. *JGL Trucking*, 466 S.W.3d at 161 (citing *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001)); Tex. R. App. P. 44.1(a)(1); *see also In re Commitment of Baiza*, 633 S.W.3d 743, 752 (Tex. App.—Houston [14th Dist.] 2021, no pet.) ("Even if the trial court abused its discretion in admitting evidence, we only reverse if the error was harmful, in other words, if it probably resulted in an improper judgment."). Here,

the disputed evidence was excluded as irrelevant, so we begin our analysis with the rules of evidence governing relevance.

Relevant evidence is broadly defined to include "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Tex. R. Evid. 401. Relevant evidence is generally admissible, while evidence that is not relevant is inadmissible. Tex. R. Evid. 402; *see also In re Commitment of Tull*, No. 14-23-00382-CV, 2024 WL 3342451, at *3 (Tex. App.—Houston [14th Dist.] July 9, 2024, no pet. h.) (subst. op.). "Relevance also governs the scope of cross-examination in Texas, as the rules allow witnesses to be cross-examined on 'any matter relevant to any issue in the case.'" *JGL Trucking*, 466 S.W.3d at 161.

As the above excerpt shows, when Reeder's counsel was cross-examining Dr. Reed, counsel questioned the doctor about whether Lucy had been sexually abused by her parents. The State objected on relevance grounds. Reeder's counsel responded that this evidence was relevant to Dr. Reed's pedophilia diagnoses and "the fact that we were dealing with a prepubescent child." The trial court sustained the State's relevance objection.

Reeder has not explained how the possibility of a child having been sexually abused by someone other than Reeder has any bearing on Dr. Reed's diagnosis of pedophilic disorder or on the ultimate issue of Reeder's having a behavioral abnormality. *Cf. Tull*, 2024 WL 3342451, at *3 (noting that the "consequential fact" in an SVP commitment proceeding is whether the appellant suffers from a behavioral abnormality making him more likely to commit acts of predatory sexual violence in the future). There is nothing relevant apparent in the question Reeder's counsel

9

posed to Dr. Reed. Reeder has not demonstrated that the trial court abused its discretion in sustaining the State's objection to the challenged question.

We overrule Reeder's sole appellate issue.

## Conclusion

We affirm the trial court's judgment.


/s/    Kevin Jewell
       Justice


Panel consists of Justices Jewell, Zimmerer, and Hassan.