**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00120-CV**

_____

**LEOPOLDO RAMOS, INDVIDUALLY AND A/N/F OF S.M., A MINOR,**
**Appellant**

**V.**

**JOSE ADOLFO CARDONA RODRIGUEZ, Appellee**

On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 21-02-01806-CV

**MEMORANDUM OPINION**

Appellant Leopoldo Ramos, individually and as next friend of S.M., a minor ("Ramos"), appeals from a take-nothing judgment that the trial court entered in favor of Appellee Jose Adolfo Cardona Rodriguez ("Rodriguez") after a jury refused to find Rodriguez negligently caused the motor vehicle collision which gave rise to Ramos's claims. Because we conclude the evidence was sufficient to support the

jury's verdict, we affirm the trial court's take-nothing judgment in Rodriguez's favor.

## Background

Ramos sued Rodriguez alleging he negligently caused a motor vehicle collision which caused Ramos's and S.M.'s injuries and damages. Rodriguez denied Ramos's allegations and asserted Ramos's negligence either caused or contributed to causing the collision. The case proceeded to trial, and the jury returned a verdict finding the collision was caused by Ramos's negligence and not by any negligence on Rodriguez's part. Based on the verdict, the trial court entered a Final Judgment awarding Ramos and S.M. nothing. In a single issue on appeal, Ramos argues the jury's verdict is so against the great weight and preponderance of the evidence that it is manifestly wrong and unjust.

## Analysis

At trial, Ramos called Rodriguez as his first witness. Rodriguez testified that he did not have a valid driver's license when the collision occurred and that his truck came into contact with Ramos's truck because he failed to pass safely. Rodriguez agreed with Ramos's counsel that he was at fault because he attempted to pass unsafely and he was the only person who could have avoided the collision. He also testified he was driving behind Ramos, who was towing a vehicle on a two-lane residential street between 20 to 25 miles per hour when Rodriguez attempted to pass

2

Ramos on the left, which was the wrong side of the road. Rodriguez agreed that he was not blaming Ramos for the collision and that if he had waited for Ramos to turn left, the collision would not have occurred.

When questioned by his own counsel, Rodriguez explained he was driving his son to the Stop-N-Go and was at a stop sign when he first observed Ramos's truck "waiting on the road and [] going really slow and pulling over." According to Rodriguez, Ramos was traveling 5 miles per hour and did not have a turn signal on. Rodriguez also testified the emergency hazard lights on Ramos's truck were on, but there were no lights on the salvage vehicle being towed behind Ramos's truck. Rodriguez explained that he decided to pass Ramos on the left because "he was pulling over and I thought that he was allowing me to pass." Rodriguez stated that when he looked to see if it was safe to pass, there were no oncoming vehicles. Rodriguez explained "when I was going to pass him, he came onto me and then we crashed . . . ." Rodriguez testified he was paying attention to everything around him and was not using his phone when the collision occurred. Rodriquez testified that once he realized Ramos was turning, he did not do anything to avoid the collision, and his passenger's side mirror collided with the driver's side of Ramos's truck. Rodriguez stated his airbags did not deploy, and he drove his truck home.

On further questioning by Ramos's counsel, Rodriguez was shown a picture of the junk vehicle Ramos was towing and agreed the picture shows lights on top of

the towed vehicle. However, when questioned again by his own counsel, Rodriguez testified he saw Ramos putting those lights on the towed vehicle after the accident.

Ramos testified that he bought a junk vehicle, hitched it up to tow, pulled out of the driveway, and was preparing to make a left turn at an intersection when Rodriguez passed him, "bounced" into his fender and driver's door, and ended up in the ditch. Ramos explained that he had his signal light on when he slowed down to make the left turn. Ramos denied he motioned Rodriguez to pass and claimed he never saw Rodriguez coming. Ramos testified lights were on the junk vehicle when the collision occurred, explaining his custom or practice is to put lights on towed vehicles as the first thing he does before he begins towing them. Ramos explained that the lights connect to the back of his truck, are visible to drivers traveling behind him, and essentially mirror the signal lights on his truck.

Ramos explained that he was driving about 10 to 15 miles per hour when the collision occurred "out of the blue[.]" Ramos believed that Rodriguez was traveling more than 30 miles per hour because "he wouldn't have flew way like 50 miles into the ditch to the left" where it had to be removed by a wrecker. Ramos claimed Rodriguez told him that he passed because he was in a hurry. Ramos stated Rodriquez "shouldn't have passed me up on a two-way lane," and if he hadn't done so, the accident would have been avoided. Ramos testified he did not have a valid driver's license when the collision occurred.

4

On cross-examination, Ramos testified he was convicted in Harris County for evading and spent one year in jail and three years on parole. Ramos's counsel objected to the testimony on the basis it violated the motion in limine and was improper character evidence, but the trial court overruled the objections noting that the motion in limine had been denied and that Ramos's conviction was being used for the purpose of impeaching Ramos's credibility under Rule 609, rather than as character evidence.

Ramos's stepson, S.M., who was a passenger in Ramos's truck, testified that on the day of the collision, he put the signal lights on top of the towed vehicle and made sure they were working properly before they towed it. S.M. also explained that their truck has an indicator on the dash that shows the signal lights are activated. S.M. explained that after he checked the signal lights and hitch, Ramos pulled onto the road, activated his left turn signal, and was about to make a left turn when "out of nowhere, like, the whole truck just shook[.]" S.M. testified Rodriguez hit them "on the left passenger side and then swerved left and flew straight into the ditch . . . pretty fast[.]" S.M. explained that just prior to the collision he was using the GPS on his cell phone and told Ramos to turn left.

At the conclusion of the evidence, Ramos objected to the first question in the jury charge – asking whose negligence, if any, proximately caused the occurrence in question -- because there was no evidence of contributory negligence and Rodriguez

5

admitted he was solely at fault for the accident. The trial court overruled Ramos's objection, noting there was evidence Ramos pulled onto the street and failed to yield the right-of-way, made an improper turn, and did not have proper lighting equipment to indicate he was turning.

In response to Question 1, the jury answered Rodriguez's negligence, if any, did not proximately cause the occurrence and that Ramos's negligence did. Despite conditional instructions that obviated the need for the jury to answer any additional questions, the jury found in Question 2 that Ramos was 100% responsible for the occurrence and in Question 3 that zero dollars was a fair and reasonable amount to compensate Ramos and S.M. for their alleged damages. The trial court incorporated the jury's findings in its Final Judgment, rendered judgment for Rodriquez, and ordered that Ramos and S.M. take nothing by their suit.

Ramos filed a Motion for New Trial, arguing the jury's verdict finding him 100% negligent for the collision is against the great weight and preponderance of the evidence. The motion also argues the jury's verdict was prejudiced by the introduction of Ramos's misdemeanor conviction for evading arrest and his lack of a valid driver's license. The trial court denied Ramos's Motion for New Trial, explaining that the jury could have believed that Ramos was not credible and failed to meet his burden of proof, and could have concluded that Ramos was distracted,

6

failed to keep a proper look out, failed to yield the right of way by pulling out in front of Rodriguez, and made an improper and unsafe turn into Rodriguez's vehicle.

Analysis

In Ramos's sole issue on appeal, Ramos argues the evidence was factually insufficient to support the jury's finding that Rodriguez was zero percent at fault for the collision. We note that the jury's answer assigning percentages of responsibility to the parties in response to Question 2 is immaterial since the Final Judgment in Rodriguez's favor is based on the jury's answer in response to Question 1 that Rodriguez's negligence, if any, did not proximately cause the occurrence in question. However, we construe Ramos's issue on appeal as fairly including an attack on the factual sufficiency of the evidence with respect to the jury's answer to Question 1. *See* Tex. R. App. P. 38.1(f).

We note the jury's answer of "No" with respect to Rodriguez in answer to Question 1 is not an affirmative finding; rather, the jury's "No" answer indicates it was not persuaded by a preponderance of the evidence that Rodriguez's negligence, if any, proximately caused the collision, issues upon which Ramos bore the burden of proof. *See JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 164-65 (Tex. 2015); *Franks v. Horton*, No. 09-21-00087-CV, 2022 WL 16643108, at *3 (Tex. App.— Beaumont Nov. 3, 2022, no pet.) (mem. op.). When an appellant challenges the factual sufficiency of the evidence supporting an adverse finding on an issue on

7

which the appellant had the burden of proof, it must show that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). We must consider and weigh all the evidence, not just that favoring the appellant, and we may set the verdict aside "only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.*

The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Golden Eagle Archery v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005. The jury may believe one witness, disbelieve another and resolve inconsistencies in any witness's testimony. *City of Keller*, 168 S.W.3d at 819; *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). A reviewing court may not impose its own opinion to the contrary. *City of Keller*, 168 S.W.3d at 819; *Golden Eagle*, 116 S.W.3d at 761. "As long as the evidence falls within the zone of reasonable disagreement, we cannot substitute our judgment for that of the factfinder." *Martin v. Clarke*, No. 09-16-00421-CV, 2017 Tex. App. LEXIS 7321, at *4 (Tex. App.—Beaumont Aug. 3, 2017, no pet.) (mem. op.).

Ramos argues the evidence against Rodriguez was overwhelming in part because he admitted he was solely responsible for the collision. The record does not indicate what standard Rodriguez used when arriving at the conclusion that he was

8

at fault, nor was the jury asked to decide who was at fault; it was asked whether either party's negligence, if any, proximately caused the collision. The jury was instructed, "'Negligence' means failure to use ordinary care. That is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances." The jury was further instructed, "The term 'preponderance of the evidence' means the greater weight and degree of credible evidence presented in this case. If you do not find a preponderance of the evidence supports a 'yes' answer, then answer 'no.'"

"A party's testimonial declarations which are contrary to his position are quasi-admissions. They are merely some evidence, and they are not conclusive upon the admitter. The weight to be given such admissions is decided by the trier of fact." *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980) (citations omitted). In addition to Rodriguez's opinion testimony that he alone was at fault, the jury also heard Rodriguez's testimony explaining his version of the facts surrounding the accident. In reaching its decision, the jury may have believed and assigned weight to Rodriguez's testimony that as he approached Ramos's vehicle from behind there were no lights on the vehicle Ramos was towing, that Ramos was going very slowly and pulling over, that just as Rodriguez was going around Ramos he turned left without signaling and collided with Rodriguez's vehicle, and that

9

Rodriguez saw Ramos putting the lights on the towed vehicle after the accident. Although Ramos and S.M. presented an alternative version of the accident, the weight of such evidence was not so great that it renders the jury's verdict manifestly wrong or unjust. The jury may have reasonably concluded the greater weight and degree of the evidence did not establish Rodriguez failed to exercise ordinary care under the circumstances. The evidence "falls within the zone of reasonable disagreement" and we cannot substitute our judgment for the jury's verdict. *See Martin*, 2017 Tex. App. LEXIS 7321, at *4.

Although not raised as a separate issue, Ramos also argues the jury's verdict was influenced by Rodriguez's counsel's improper impeachment of Ramos with his prior conviction for evading arrest, which he asserts is not a crime of moral turpitude. We note that Ramos's complaint on appeal does not comport with his objections at trial, which were that the evidence violated the motion in limine and constituted improper character evidence. *See* Tex. R. App. P. 33.1(a) (requiring a timely objection stating grounds with sufficient specificity to make the trial court aware of the complaint in order to preserve an objection for appellate review). We also note Ramos's conviction for evading arrest could not have been a misdemeanor, because Ramos testified he served one year in jail and three years on parole as a result of his conviction. *See* Tex. Penal Code Ann. §§ 12.21 (punishment for Class A Misdemeanor cannot exceed one year in jail), 38.04 (indicating offense of evading

10

arrest can be a Class A misdemeanor, state jail felony, second-degree felony, or third-degree felony). As the trial judge explained to Ramos's counsel, the conviction was not admitted as character evidence but for the purpose of impeachment under Rule 609, which allows a witness's felony conviction to be used to impeach the witness's credibility. *See* Tex. R. Evid. 609 (evidence of a witness's prior conviction must be admitted for purposes of impeachment if the crime was either a felony or a crime of moral turpitude). Based on this record, we cannot conclude that Ramos was improperly impeached with his prior conviction for evading arrest.

Having concluded the evidence was factually sufficient to support the jury's verdict, we overrule Ramos's sole issue and affirm the trial court's take-nothing judgment in Rodriguez's favor.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on August 13, 2024
Opinion Delivered April 17, 2025

Before Golemon, C.J., Wright and Chambers, JJ.

11