# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00474-CV

**Levy Architects, PLLC and SVL Ventures, LLLP, Appellants**

**v.**

**Michael Gin, Appellee**

### FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-20-006422, THE HONORABLE LAURIE EISERLOH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Levy Architects, PLLC (Levy) and SVL Ventures, LLLP (SVL) appeal from the trial court's order on Michael Gin's no-evidence motion for summary judgment. In its order, the trial court sustained objections to Levy and SVL's summary-judgment evidence, granted Gin's no-evidence motion, and dismissed Levy and SVL's claims against Gin with prejudice. For the following reasons, we affirm the trial court's order.

## BACKGROUND

In 2012, Levy, an architectural firm that is wholly owned by SVL, hired Gin to serve as a Project Architect, and as a term of his employment, Gin signed a non-disclosure and non-competition agreement. He agreed not to compete with Levy during his employment and following termination of employment and to refrain from disclosing Levy's "customer lists, trade secrets, or any and all other proprietary and confidential material." In January 2015, Gin also

signed a Profit Allocation Agreement with SVL. This agreement provides that its term is one year, that it "shall be automatically renewed for consecutive" one year terms until it is terminated pursuant to the agreement's provisions, that Gin "shall receive a profit allocation" according to an agreed formula,[1] and that Gin agrees not to (i) disclose information furnished to him by SVL, (ii) solicit business from SVL's clients for two years after the termination of the agreement, or (iii) provide services that were "substantially similar to those provided by [SVL]" for one year after termination. At the end of June 2020, Gin provided notice that he was resigning; on August 27, 2020, Gin and Levy signed a separation agreement in which Gin acknowledged his agreements not to disclose confidential information or compete; and on September 4, 2020, his employment ended.

In October 2020, Levy and SVL sued Gin, asserting claims of breach of contract, violation of the Texas Uniform Trade Secrets Act (TUTSA),[2] fraud, tortious interference with an existing contract, and conversion. Levy and SVL alleged that Gin was violating his agreements not to compete or disclose confidential information. They alleged that Gin had taken client files, formed "Michael Gin Architect, PLLC," and "misappropriated $337,375.66 in the course of his

---

[1] The profit allocation formula is stated as follows:

Profit Allocation Formula:

1. Michael Gin shall be entitled to five percent (5%) of the net income of Levy Architects, PLLC, a limited liability company wholly owned by SVL Ventures, LLLP (the "Profits Allocation").
2. As an advance against the net income to be paid to Michael Gin, SVL Ventures, LLLP shall pay Michael Gin an annual draw in the amount of $65,000 (the "Draw Amount") which shall be paid monthly in the amount of $5,416.66.
3. At the end of the year, the Draw Amount shall be subtracted from the total Profit Allocation due to Michael Gin and the difference shall be paid to Michael Gin.

[2] *See* Tex. Civ. Prac. & Rem. Code §§ 134A.001–.004.

relationship with [Levy and SVL]." Levy and SVL sought temporary injunctive relief, damages, and attorney's fees.

In April 2021, the trial court signed an agreed confidentiality and protective order to protect confidential information. The order authorized the parties to designate documents or information produced during discovery as confidential information and set out the procedures for making and challenging a designation of confidentiality. For documents, the party asserting confidentiality was required to place a legend or stamp on the document, and if challenged by motion, had the burden to prove "good cause for the entry of an order maintaining confidentiality."

In November 2022, Gin filed a motion to compel discovery, asking the trial court to overrule objections by Levy and SVL to Gin's discovery requests, to compel them to amend their responses, and to supplement their production, specifically discovery requests "pertaining to damages." Gin's discovery requests included a request for disclosure that he served with his original answer in December 2020, requests for production, and interrogatories. Gin represented that Levy and SVL had "provided virtually no information regarding their alleged damages." On January 13, 2023, the trial court signed an agreed order on Gin's motion to compel. The trial court overruled Levy and SVL's objections to discovery requests and ordered Levy and SVL within 30 days to provide full and complete responses to the discovery requests.

On February 23, 2023, Gin filed a motion for sanctions for noncompliance with the trial court's January 2023 order and for abuse of discovery and a motion to compel responses to a third set of discovery requests, which were served in October 2022. *See* Tex. R. Civ. P. 215.2, .3. Gin asserted that sanctions were appropriate because Levy and SVL "entirely disobeyed" the court's January 2023 order, refusing "to disclose the amount and method of

calculation of damages more than two years into the pendency of the case." Gin represented that Levy and SVL had not amended their discovery responses, produced any additional responsive documents, and as to the third set of discovery requests, responded at all.

On the same day that he filed the motion for sanctions and to compel, Gin also filed his no-evidence motion for summary judgment challenging the element of injury or damages caused by his alleged misconduct for each of Levy and SVL's claims. He contended that he was entitled to summary judgment on all asserted claims unless Levy and SVL presented evidence raising a fact issue that "they have suffered concrete damages as a result of each alleged claim." He asserted that the more than two years that the case had been pending was an adequate time for discovery, that Levy and SVL had "produced no evidence of damages for any of their claims," and that they had "no competent summary judgment evidence to establish they suffered any injury or damages, an essential element of each of their claims." Specifically, Gin asserted: (i) as to their breach-of-contract claim, they had presented no evidence of any injury caused by his alleged breach; (ii) as to their TUTSA claim, they had presented no evidence that his alleged "misappropriation of a trade secret caused them injury"; (iii) as to their fraud claim, they had presented no evidence that his "alleged fraud caused them actual damages"; (iv) as to their claim for tortious interference, they had presented no evidence that the "alleged interference caused [them] any actual damage or loss"; and (v) as to their conversion claim, they had presented no evidence that they "suffered any resulting injury" from his "alleged conversion."

The following day, February 24, 2023, Gin also served notices that a hearing on his motion for sanctions and to compel was set for March 7, 2023, and a hearing on his no-evidence motion for summary judgment was set for April 3, 2023.

4

In their response to Gin's motion to compel, Levy and SVL stated that they "simply need slightly more time to respond" to the Court's January 2023 order, requesting fourteen more days. On March 20, 2023, the trial court signed an order granting the motion to compel, sanctioning Levy and SVL $10,000, and ordering them within fourteen days to produce full and complete responses to Gin's third request for production and to fully comply with the trial court's January 2023 order.

On March 27, 2023, Levy and SVL filed a response to Gin's no-evidence motion for summary judgment. They agreed that their claims required evidence of damages/injury caused by Gin's alleged misconduct but contended that there was at least a scintilla of evidence as to the challenged elements. They supported their response with evidence, attaching an appendix with Exhibits A to R. The exhibits included correspondence, affidavits, deposition excerpts, the June 2012 non-disclosure and non-competition agreement, the 2015 Profit Allocation Agreement, and the August 2020 Separation Agreement. Relevant here, Exhibit A was an affidavit by Stephen Levy, Exhibit O was identified as "Levy Project Report containing 'Goodwill' given to clients for Oaks at Slaughter totaling $28,625.00," and Exhibit Q was identified as a "Spreadsheet showing payments made to re-create missing standard drawings totaling $51,446.87." As to Exhibit O, no report was produced. The appendix includes a page titled Exhibit O and then stating "CONFIDENTIAL" and "TO BE REVIEWED *IN CAMERA*."[3]

In his affidavit, Stephen Levy, who was president of Levy and the managing member of SVL, averred in part:

---

[3] Exhibit P, which was identified as "Business records showing overpayment to [Gin] totaling $337,375.66," also was not attached to the response to the no-evidence motion. Like Exhibit O, the appendix includes a page titled Exhibit P and then stating "CONFIDENTIAL" and "TO BE REVIEWED *IN CAMERA*." On appeal, Levy and SVL do not challenge the trial court's exclusion of Exhibit P.

5. Mr. Gin absconded with files that belonged to [Levy and SVL] and began to work within a fifty (50) mile radius in breach of the Profit Allocation Agreement for which he was paid $337,375.66, thus causing financial injury to [SVL] of at least $337,375.66.

6. Mr. Gin also erased confidential files which caused [Levy] financial injury as [it] has paid $51,446.87 to outside architects to re-create files and has further caused financial injury to [Levy] in the form of "Goodwill" to clients totaling at least $28,625.00 for one project that Mr. Gin has admitted to attempting to solicit (The Oaks at Slaughter) and at least $85,041.40 on another (Colton House).

7. On September 4, 2020, [Gin] signed an affidavit in which he admitted to taking files with him subsequent to his departure, and further acknowledged his continued duties to [Levy and SVL] under the various agreements containing non-competition, non-solicitation and/or confidentiality provisions. Files that went missing the same time that Mr. Gin left are still being discovered as missing. Mr. Gin's departure from the company is the only time that files have gone missing from our server.

8. Six days prior to this, [Gin] was actively soliciting the 1120 E. Braker project and telling [Levy's] client that there would be no problem continuing to work with Mr. Gin despite all the non-competition, non-solicitation and confidentiality agreements [Gin] had signed and continued to affirm duties pursuant to. This caused [Levy and SVL] financial injury in the form of lost profits as Levy Architects then lost the 1120 E. Braker project.

9. The financial injury suffered by both [Levy and SVL] is continuing to be investigated and will likely increase subject to an expert report being prepared in this case.

Gin filed a reply in support of his no-evidence motion for summary judgment. He objected to evidence that Levy and SVL attached to their response, contending that some of the documents were irrelevant to damages, some of the documents were "never produced or provided seven days before the hearing (or ever)" in violation of Texas Rule of Civil Procedure 166a(d), and some of the evidence "such as a summary exhibit with no backup documentation" was inadmissible under the Texas Rules of Evidence and, thus, not proper summary judgment evidence. He also argued that the evidence Levy and SVL produced in response to his motion had not raised a fact issue as to the "challenged element of damages/injuries."

6

Following the hearing, the trial court signed its order granting Gin's no-evidence motion for summary judgment and sustaining his objections to evidence that Levy and SVL filed in response to the motion, including sustaining objections to section 6 of Levy's affidavit and to Exhibits O and Q.

Levy and SVL filed a motion for reconsideration and for new trial, which was overruled by operation of law.[4] This appeal followed.

## ANALYSIS

In three issues, Levy and SVL argue that the trial court erred in granting Gin's no-evidence motion for summary judgment, abused its discretion by refusing to grant leave or consider evidence submitted *in camera*, and erred in striking their summary-judgment evidence. Because our resolution of their challenges to the trial court's evidentiary rulings impacts our analysis of its summary-judgment ruling, we begin with Levy and SVL's issues challenging the trial court's evidentiary rulings.

**Challenges to Evidentiary Rulings**

In their second and third issues, Levy and SVL argue that the trial court abused its discretion in sustaining Gin's objections to their summary judgment evidence, that it erred in excluding and not considering some of their evidence, and that its exclusion of the evidence

---

[4] Levy and SVL attached evidence to their motion for reconsideration and for new trial including a redacted version of Exhibit Q, a chart showing years 2015 to 2020 with stated amounts due back to Levy, and an expert report addressing the calculation of damages. They, however, have not raised an issue as to the denial of this motion.

probably caused the rendition of an improper judgment. Specifically, they challenge the trial court's exclusion of Exhibits O and Q and Section 6 of the affidavit of Stephen Levy.[5]

*Standard of Review*

"The same evidentiary standards that apply in trials also control the admissibility of evidence in summary-judgment proceedings." *FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 837 (Tex. 2022) (quoting *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 163–64 (Tex. 2018)); *accord Fort Brown Villas III Condo. Ass'n v. Gillenwater*, 285 S.W.3d 879, 882 (Tex. 2009). We review a trial court's ruling to exclude summary judgment evidence for an abuse of discretion. *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) (per curiam). A trial court abuses its discretion "by acting 'without reference to any guiding rules and principles.'" *Id.* (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). Further, a trial court's error in excluding evidence is reversible only if it probably caused the rendition of an improper judgment. *JLG Truckimg, LLC v. Garza*, 466 S.W.3d 157, 165 (Tex. 2015) (citing Tex. R. App. P. 44.1(a)(1)).

*Exclusion of Exhibit O*

The trial court sustained Gin's objection to Exhibit O on the ground that Levy and SVL had failed to comply with Texas Rules of Civil Procedure 166a(d) and 193.6.

---

[5] The trial court sustained additional objections to Exhibits O and Q, but we need not address the trial court's ruling as to those objections. *See Jones v. Mattress Firm Holding Corp.*, 558 S.W.3d 732, 737 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (explaining that "appellate court will uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling"). The trial court also sustained objections to Exhibit P and sections 5 and 8 and part of section 7 of Stephen Levy's affidavit, but Levy and SVL do not challenge those rulings on appeal.

"Except on leave of court, the adverse party, not later than seven days prior to the day of the hearing may file and serve opposing affidavits or other written response."  Tex. R. Civ. P. 166a(c).  For discovery products not otherwise on file with the trial court, Rule 166a(d) provides in relevant part:

> Discovery products not on file with the clerk may be used as summary judgment evidence if copies of the material, appendices containing the evidence, or a notice containing specific references to the discovery or specific references to other instruments, are filed and served on all parties together with a statement of intent to use the specified discovery as summary judgment proofs . . . at least seven days before the hearing if such proofs are to be used to oppose the summary judgment.

Tex. R. Civ. P. 166a(d).  And Rule 193.6(a) provides in relevant part:

> A party who fails to make, amend, or supplement a discovery response, including a required disclosure, in a timely manner may not introduce in evidence the material or information that was not timely disclosed . . . .

*Id.* R. 193.6(a); *see F1 Constr., Inc. v. Banz*, No. 05-19-00717-CV, 2021 Tex. App. LEXIS 401, at *5 (Tex. App.—Dallas Jan. 20, 2021, no pet.) (mem. op.) (stating that Rule 193.6(a)'s exclusion of evidence that is not timely disclosed in response to discovery requests is mandatory and "automatic" absent showing of good cause or lack of unfair surprise or unfair prejudice).

Levy and SVL do not dispute that they did not file with the trial court or serve a copy of Exhibit O on Gin before April 3, 2023, the day of the summary-judgment hearing.  Levy and SVL contend that Exhibit O was timely produced because they complied with the trial court's March 20, 2023 order that granted Gin's motion to compel and ordered Levy and SVL within fourteen days—which was April 3—to fully comply with discovery requests.  Levy and SVL also rely on the page in the appendix titled Exhibit O and then stating "CONFIDENTIAL" and "TO BE REVIEWED *IN CAMERA*."  They characterize the page as a "place holder" for the

9

exhibit until such time the trial court could review the exhibit *in camera*. The agreed protective order, however, did not authorize a party to withhold confidential information that was otherwise discoverable but provided that a party could designate a document as confidential by placing a legend or stamp on the document, prohibited the recipient of confidential information from using the information except in this proceeding, and limited the disclosure of the information to other persons. Further, Levy and SVL have not cited, and we have not found, authority that would excuse their non-compliance with the seven-day deadline in Rule 166a based on the trial court's order compelling compliance with discovery requests by a certain date.

Levy and SVL also argue that the trial court abused its discretion by not considering evidence, even if it was not filed timely, because there was no surprise, they "gave notice that they would provide some of their evidence *in camera* at the hearing," and "[t]here was good cause for any failure by [them] to timely amend [their] discovery responses/production to Gin." A trial court may grant a motion for leave to file a late summary-judgment response "when a litigant establishes good cause for failing to timely respond by showing that (1) the failure to respond was not intentional or the result of conscious indifference, but the result of accident or mistake, and (2) allowing the late response will occasion no undue delay or otherwise injure the party seeking summary judgment." *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 688 (Tex. 2002). The record, however, does not reflect that Levy and SVL filed a motion for leave to file evidence less than seven days before the hearing, they do not cite to the record where they raised this argument with the trial court, and they have not provided a reporter's record from the summary-judgment hearing. In this situation, we cannot conclude that the trial court abused its discretion by not considering late-filed evidence. *See* Tex. R. Civ. P. 166a(c) (requiring nonmovant to file response and affidavits at least seven days prior to hearing

10

unless court grants leave to file late), (d) (requiring nonmovant to provide notice of intent to use discovery products not otherwise on file "at least seven days before the hearing"); *Parker Barber & Beauty Supply, Inc. v. Wella Corp.*, No. 03-04-00623-CV, 2006 Tex. App. LEXIS 8841, at *25–26 (Tex. App.—Austin Oct. 11, 2006, no pet.) (mem. op.) ("To consider late-filed evidence, the record must affirmatively demonstrate that the evidence was filed with leave of court or that the court otherwise accepted or considered it.").

Because Levy and SVL failed to file or serve Exhibit O in compliance with the seven-day deadline for responding to Gin's no-evidence motion, we conclude that the trial court did not abuse its discretion by sustaining Gin's objection and excluding it. *See Montes v. Montes*, No. 04-20-00474-CV, 2021 Tex. App. LEXIS 5982, at *9–10 (Tex. App.—San Antonio July 28, 2021, no pet.) (mem. op.) (explaining that "purpose of Rule 166a(d) is to provide a method for parties to rely on materials that have been produced in discovery, but not filed with the court" and observing that Rule 166a(d) "on its face does not authorize the use of *unserved* discovery responses").[6]

*Exclusion of Exhibit Q*

As to Exhibit Q, the trial court sustained Gin's objections that were based on Texas Rules of Evidence 1002 and 1006. Rule 1002 requires an original writing "in order to prove the content" unless the Rules of Evidence or other law provides otherwise. Tex. R. Evid.

---

[6] As support for their position that their response provided "specific reference" to Exhibit O in compliance with Texas Rule of Civil Procedure 166a(d), Levy and SVL rely on *Salmon v. Miller*, 958 S.W.2d 424 (Tex. App.—Texarkana 1997, pet. denied), but the analysis in that case is consistent with our analysis here. As our sister court acknowledged, Rule 166a(d) allows the use of documents that "have been *served* on all parties together with a statement of intent to use the specified discovery as summary judgment proofs." *Id.* at 427 (emphasis added). In this case, Levy and SVL did not serve Exhibit O on Gin prior to the summary judgment hearing.

1002. Rule 1006 allows a proponent to use a summary, chart, or calculation to prove the content of voluminous writings or recordings "that cannot be conveniently examined in court," but the proponent "must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place." *Id.* R. 1006.

Levy and SVL identified Exhibit Q as a "Spreadsheet showing payments made to re-create missing standards drawings totaling $51,446.87." The document has three lines: two lines list the names of two "consultants" with an "Amount Paid" next to each and a third line with the total of $51,446.87:

| Consultant | Amount Paid | Levy Document Management Manual | |
|---|---|---|---|
| The Mendicant Architect | $ 35,425.87 | | PLAINTIFF'S EXHIBIT Q |
| Applied Software | $ 16,021.00 | | |
| Total | $ 51,446.87 | | |

In his objections to the trial court, Gin argued that this exhibit violated the best evidence rule and was improper summary judgment evidence because it "purports to summarize what could be set forth in two invoices that have never been produced" and that "[n]o voluminous records are summarized here in this spreadsheet apparently created by [Levy and SVL] and/or their attorney." He also asserted that "copies of the underlying checks/payments were never served on [him] or otherwise made available to [him] for examination or copying," and Levy and SVL do not contend otherwise. Because Levy and SVL did not make underlying documents available to support that the alleged amounts were paid to consultants and that those amounts were paid to re-create files that Gin erased, we cannot conclude that the trial court

abused its discretion by sustaining Gin's objections based on Rules of Evidence 1002 and 1006 and excluding Exhibit Q.

*Exclusion of Section 6 of Stephen Levy's Affidavit*

In section 6 of his affidavit, Stephen Levy averred:

> 6. Mr. Gin also erased confidential files which caused [Levy] financial injury as [it] has paid $51,446.87 to outside architects to re-create files and has further caused financial injury to [Levy] in the form of "Goodwill" to clients totaling at least $28,625.00 for one project that Mr. Gin has admitted to attempting to solicit (The Oaks at Slaughter) and at least $85,041.40 on another (Colton House).

The trial court's sustained objections to Section 6 included that the testimony was legally and factually conclusory and violated the best evidence rule. *See* Tex. R. Evid. 1002. "A conclusory statement is one that does not provide the underlying facts to support the statement." *Holloway v. Dekkers*, 380 S.W.3d 315, 323 (Tex. App.—Dallas 2012, no pet.) (citing *Schindler v. Baumann*, 272 S.W.3d 793, 796 (Tex. App.—Dallas 2008, no pet.)). Conclusions in an affidavit are insufficient to raise a fact issue in response to a summary-judgment motion. *Id.* (citing *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984); *James L. Gang & Assocs. v. Abbott Labs., Inc.*, 198 S.W.3d 434, 442 (Tex. App.—Dallas 2006, no pet.)).

In this case, the trial court reasonably could have determined that Section 6 was improper summary judgment evidence because Stephen Levy did not provide underlying factual support for the asserted amounts of $51,446.87, $28,625.00, and $85,041.40. Like its decision to exclude Exhibit Q, the trial court reasonably could have determined that Stephen Levy's statement of the amount paid to outside architects violated the best evidence rule and that his statement was conclusory because it did not provide sufficient underlying facts.

13

Similarly, as to his statement that Gin caused financial injury in the form of good will of $28,625.00 and $85,041.40, the trial court reasonably could have determined that his statement was conclusory because it did not provide sufficient underlying facts for "how he determined" these amounts. *See Orbison v. Ma-Tex Rope Co.*, 553 S.W.3d 17, 29 (Tex. App.—Texarkana 2018, pet. denied) (discussing measure of damages for good will and providing example of evidence that could support opinion estimating amount of damage to good will—evidence showing "percentage of the salaries of employees required to forego regular duties, and of other expenses incurred, to repair the damage to the company's good will"). Although there is not a fixed standard for measuring damages for good will, "opinions as to the amount of good will damages must at least 'be based on objective facts, figures or data from which the loss of good[]will may be ascertained.'" *Id.* (quoting *Auburn Invs., Inc. v. Lyda Swinerton Builder, Inc.*, No. 04-08-00067-CV, 2008 Tex. App. LEXIS 5667, at *8 (Tex. App.—San Antonio July 30, 2008, no pet.) (mem. op.)). Thus, the trial court reasonably could have determined that the stated amounts of damages for good will in Section 6 were conclusory. For these reasons, we conclude that the trial court did not abuse its discretion in sustaining Gin's objections to Section 6 of Stephen Levy's affidavit.

Having determined that the trial court did not abuse its discretion in excluding Exhibits O and Q and Section 6 of Stephen Levy's affidavit, we overrule Levy and SVL's second and third issues.

**No-Evidence Motion for Summary Judgment**

In their first issue, Levy and SVL contend that the trial court erred in granting Gin's no-evidence motion for summary judgment.

14

*Standard of Review*

We review the trial court's summary-judgment ruling de novo. *See Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). Under this standard, we view "the evidence in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Zive*, 644 S.W.3d at 173 (quoting *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019)).

A movant seeking a no-evidence summary judgment must assert that "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex. R. Civ. P. 166a(i). "The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact" on the challenged elements. *Id.*; *see JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex. 2006). "A genuine issue of material fact exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "The evidence does not create an issue of material fact if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Id.* (quoting *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)).

*Did the trial court err in granting the no-evidence motion?*

Levy and SVL do not dispute that each of their claims required proof of damages/injury caused by Gin's alleged misconduct and that Gin's no-evidence motion

15

challenged this element of each of their claims. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (requiring proof that "plaintiff sustained damages as a result of the breach" as element of breach-of-contract claim); *Reilly v. Premier Polymers, LLC*, No. 14-19-00336-CV, 2020 Tex. App. LEXIS 9385, at *10 (Tex. App.—Houston [14th Dist.] Dec. 3, 2020, pet. dism'd) (mem. op.) (requiring proof that misappropriation of trade secret "caused injury that warrants injunctive relief or damages" as element of TUTSA claim); *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex. 1994) (requiring proof that material misrepresentation caused injury as element of fraud claim); *Community Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017) (requiring proof that plaintiff "incurred actual damage or loss" as elements of tortious-interference-with-contract claim); *Bookout v. Shelley*, No. 02-22-00055-CV, 2022 Tex. App. LEXIS 8639, at *63 (Tex. App.—Fort Worth Nov. 23, 2022, no pet.) (mem. op.) (requiring proof that "plaintiff suffered injury" as element of conversion claim).

As to their breach-of-contract claim and TUTSA claims, Levy and SVL assert that even if they did not put forth any evidence on damages, the trial court could not dismiss those claims because these claims are enforceable through injunctive relief.[7] They argue that "[b]ecause the evidence is undisputed that Gin is liable to [them], they are entitled to injunctive relief and the trial court could not dismiss their claims." Based on their assertion that liability was undisputed, they also argue that even if there was not sufficient evidence for injunctive relief, they "were still entitled to nominal damages." Challenging only one of the elements of a claim for purposes of a no-evidence motion, however, is not a concession by the movant that the evidence is undisputed as to other elements of the claim such as liability. *See* Tex. R. Civ. P.

---

[7] *See* Tex. Civ. Prac. & Rem. Code § 134A.003 (authorizing injunctive relief).

16

166a(i).  Further, Levy and SVL's pleadings only sought temporary injunctive relief during the pendency of the case, they did not plead for nominal damages or for a contractual remedy, and they raise this argument for the first time on appeal.  In this context, we may not consider their arguments about injunctive relief and nominal damages as grounds for reversal.[8]  *See* Tex. R. Civ. P. 166a(c) ("Issue not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *Daniels v. Bertolino*, No. 03-14-00671-CV, 2015 Tex. App. LEXIS 8403, at *5 (Tex. App.—Austin Aug. 12, 2015, no pet.) (mem. op.) ("A party may not raise new reasons why a summary judgment should have been denied for the first time on appeal." (citing Tex. R. Civ. P. 166a(c))).

Levy and SVL also argue that "[i]t is undisputed that [they] have liquidated damages" for Gin's breach of the Profit Allocation Agreement.  They contend that the evidence established that:  (i) they paid $436,947.76 to Gin under the agreement "of which $337,375.65 was advanced but not owed to Gin"; (ii) in 2020, Gin was advanced $31,558.54 "per the terms of the Profit Agreement"; and (iii) they "lost the benefit of $436,947.76 advanced to Gin by SVL."  In excerpts from Gin's deposition, Gin testified that he believed that he had received

---

[8] As support for their position that the trial court should not have granted the no-evidence motion for summary judgment because injunctive relief is available as to their breach-of-contract claims, Levy and SVL cite *BioTE Med., LLC v. Medcalf*, No. 05-20-00661-CV, 2022 Tex. App. LEXIS 9604 (Tex. App.—Dallas Dec. 30, 2022, no pet.) (per curiam) (mem. op.).  In that case, our sister court reversed the trial court's grant of a no-evidence summary judgment that challenged the element of damages on a breach-of-contract claim, but the appellant's pleadings requested permanent injunctive relief, and based on an affidavit and an injunctive-relief provision in the contract at issue, the court concluded that there was more than a scintilla of evidence to raise a fact issue "as to the availability of a contract remedy for purposes of a no-evidence motion for summary judgment."  *Id.* at *18–21.  In contrast, Levy and SVL do not rely on such a provision in any of the contracts at issue, they did not plead for permanent injunctive relief, and they did not raise this argument in their response to the summary judgment motion.

approximately $436,947.76 in advances pursuant to the agreement over the amount of time that he worked for Levy, and the agreement was produced in response to the no-evidence motion.

The agreement, which was in effect from January 2015 until 2020, provides the formula for calculating Gin's profit allocation on an annual basis and expressly addresses the effect of Gin's "Cessation of Work" for SVL: "In the event [Gin] ceases providing services to [SVL], this Agreement shall be immediately terminated. Upon termination, [Gin] shall receive all profit due to Profits Partner under this Agreement through the date that [Gin] ceased providing services to [SVL]."[9] The agreement's plain language makes clear that the payments to Gin were based on the profits of SVL until he ceased providing services to SVL and were not tied to or contingent on Gin's compliance with his agreement not to compete or solicit business after he no longer was providing services to SVL. Thus, the evidence of payments to Gin pursuant to this agreement does not raise a fact issue that would support liquidated damages or a lost benefit that would be recoverable by SVL based on Gin's alleged breach of the agreement post-termination. *See Atrium Med. Ctr., LP v. Houston Red C LLC*, 595 S.W.3d 188, 192–93 (Tex. 2020) (discussing liquidated damages provisions in contracts).

Levy and SVL further argue that Exhibit Q is competent summary-judgment evidence of their damages for their breach-of-contract, conversion, and TUTSA claims, and that Exhibit O and Section 6 of Stephen Levy's affidavit are competent summary-judgment evidence of their damages for their tortious-interference claim, but we have concluded that the trial court

---

[9] Levy and SVL's Exhibit G, SVL's "Transactions by Account," is consistent with the profit allocation formula contained in the agreement. The reflected transactions generally show monthly payments to Gin beginning in January 2015 of $5,416.66, with the last payments in 2016 and 2017 being larger. He received over $10,500 in SVL's last payment to him in 2016, he received over $31,000 in SVL's last two payments to him in 2017, and SVL's last payment to him was for $736.92 at the end of August 2020.

did not err in excluding that evidence and not considering it. They also do not cite evidence that would support the challenged element of injury as to their fraud claim, and they have not shown how any of their other evidence raises fact questions as to the challenged elements of their claims—damages/injury caused by Gin's alleged misconduct. *See State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 891–92 (Tex. 2009) ("Causation relates to both liability and damages because it is the connection between them.").

Because we conclude that Levy and SVL did not produce evidence to raise a fact question on the element of damages/injury as to each of their claims, we conclude that the trial court did not err in granting Gin's no-evidence motion for summary judgment and overrule their first issue.

## CONCLUSION

Having overruled Levy and SVL's issues, we affirm the trial court's order on Gin's no-evidence motion for summary judgment.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Smith and Theofanis

Affirmed

Filed:   August 14, 2024